■   RUTH GOLDEN, Respondent, v RAMAPO IMPROVEMENT CORP., Appellant, et al., Defendant.—In a mortgage foreclosure action, defendant Ramapo Improvement Corp. appeals from (1) an order of the Supreme Court, Rockland County (Burchell, J.), entered September 29, 1978, which, *inter alia*, granted plaintiff's motion for severance and partial summary judgment on past due interest and taxes and denied its cross motion for summary judgment, and (2) a judgment of the same court (Walsh, J.), entered May 25, 1979, which, *inter alia*, ordered partial foreclosure and sale of the real property in question subject to a continuing lien of the mortgage in the amount of the unpaid principal. Appeal from the order dismissed (see *Matter of Aho*, 39 NY2d 241, 248). Judgment affirmed. Plaintiff is awarded one bill of $50 costs and disbursements to cover both appeals. In May, 1972 plaintiff Ruth Golden accepted a purchase-money mortgage and mortgage note from defendant Ramapo Improvement Corporation (hereinafter defendant) in the amount of $240,000, representing the balance due for the sale of an approximately 40-acre parcel of land simultaneously conveyed by plaintiff to defendant. The mortgage specified that any payments made under its provisions for releasing parcels from the mortgage would be credited against amortization payments as they fell due under a schedule calling for installments of $10,600 every August 31, starting in 1974, with the balance due on August 31, 1979. The mortgage also granted plaintiff an option to accelerate the payment of the entire principal upon a default in payments of principal, interest or taxes. In her complaint plaintiff alleged (without denial by defendant) a default in payments of quarterly interest installments for 1976 and 1977, taxes for the periods 1975-1976 and 1976-1977, and principal installments for 1976 and 1977. She elected to accelerate the remainder due under the mortgage. The record shows, however, that payments for releases granted by plaintiff had amounted to $86,185 as of the date the first installment of principal fell due, and amounted to $95,125 by the end of January, 1976; the remainder was $144,875. In applying these release payments against the amounts due under the amortization schedule, it appears that defendant was not, in fact, in arrears at any time as to the principal. Possibly for this reason, by notice of motion dated April 27, 1978, plaintiff moved for a severance and for partial summary judgment on so much of her claim as sought foreclosure and sale for all payments due as of October 20, 1976, when defendant had been formally notified of its default pursuant to the terms of the mortgage. Initially stating that the debt then due included interest and taxes, "as well as the total principal of the mortgage which has become due by reason of the election by plaintiff to declare the entire principal due", her motion sought judgment without necessity for a reference to compute, and clarified her intentions by stating that she has "not sought judgment of foreclosure by reason of the admitted failure to make additional interest, principal and tax payments and reserves

her rights with regard thereto". Defendant opposed the motion on the ground that the plaintiff was attempting to foreclose on only part of the mortgage and that this constituted an impermissible splitting of her cause of action. In addition, defendant cross-moved for summary judgment on the ground that the complaint's description of the property in question was defective. Specifically, the description had excepted property released from the mortgage, and one of the released parcels had merely been described by reference to a map entitled "Golden Estates Section I" filed in the county clerk's office. The difficulty lay in the fact that the "Section I" reference was contained only in the legend in one corner of the map of the plat, and there was no specific indication that it referred only to a subdivision drawn in the map's center rather than to both the subdivision and the surrounding area labeled "other lands of Ramapo Improvement Corp." Therefore, argued defendant, since the premises' description was drafted in terms of a companion map utilizing the identical boundaries, entitled "Golden Estates Section II", the whole of the mortgaged premises as described was coterminous with the released parcel (Section I) and therefore excepting Section I from the whole left no property on which to foreclose. In reply, plaintiff pointed out that the Section II map was a companion map which, both by sequence in the map book and by display of additional subdivisions, clearly showed that Section I was but an earlier subdivision of the entire premises and that it was labeled as such (i.e., "Section I") on the later map. Plaintiff offered an amendment to specify the released parcels by lot number. Special Term (Burchell, J.) granted plaintiff's motion and denied defendant's cross motion, finding the defendant's contention regarding the description's ambiguity to be without merit, and appointed a Referee "to ascertain and compute the amount due (and the amount hereafter to become due), with interest to the date of his report" and to determine if the premises could be more fairly sold in parcels rather than as a whole. The Referee recommended the sale of the mortgaged premises as one parcel. Plaintiff next moved to confirm the Referee's report and for judgment that, as drafted by plaintiff, included the amended description of the premises and a specification that the sale be subject to the mortgage on which the unpaid balance was $144,875. Special Term (Walsh, J.) granted the motion and denied defendant's cross motion to vacate the Referee's report on the ground that the amendment of the description was an improper amendment of the complaint. On appeal defendant argues that plaintiff split her cause of action, to its prejudice, and that the allegedly defective description was improperly cured without formally amending the complaint so that it could respond in an amended answer. Both contentions are without merit. Defendant's first argument appears to be premised on injury arising from the sale of the property subject to the mortgage, which would terminate the defendant's equity of redemption and therefore defendant's control over the primary security for the mortgage note on which it yet remains liable—the premises. Presumably defendant would have preferred a foreclosure of the entire debt rather than this partial foreclosure because in the former situation its maximum exposure on the note would be limited to what might have been a small deficiency judgment, if any, upon sale of the premises unencumbered by the mortgage. Alternatively, defendant's unspecific argument may be a more direct (though premature) attack on the validity of continuing liability based on the purportedly still extant mortgage for $144,875. The rule against splitting a cause of action precludes plaintiff from recovering in a later action any part of a debt that could have been recovered in an earlier action; however, the debt must have been due at the time of the earlier

action for this rule to operate (see *O'Dougherty v Remington Paper Co.*, 81 NY 496, 498-500; *Holden v Sackett*, 12 Abb Prac 473, 475). Thus any direct attack on the continuing validity of the mortgage note depends on whether plaintiff's initial election to accelerate was properly revoked, as Special Term impliedly determined in granting a judgment of foreclosure and sale with the continuing lien. The general rule is that waiver of the right to accelerate the mortgage debt is discretionary with the mortgagee *(Adler v Berkowitz*, 254 NY 433, 437; *Odell v Hoyt*, 73 NY 343). It is this discretion that distinguishes an option to accelerate from a provision in the mortgage for automatic acceleration upon default in an installment (see *Batchelder v Council Grove Water Co.*, 27 Jones & Sp 262, affd 131 NY 42; *Leakey v Schwing*, 150 Misc 150). By its admission of default, defendant does not contest plaintiff's right to accelerate (see, e.g., *Domus Realty Corp. v 3440 Realty Co.*, 179 Misc 749, affd 266 App Div 725); rather, defendant's argument implies that plaintiff either did not or could not revoke her election to accelerate. In either case defendant's position is not supported by the undisputed facts. Plaintiff's purpose in moving for severance and partial summary judgment and in submitting a judgment containing the provision for continuing the mortgage was clearly to limit her recovery to those sums already past due under the payment schedules of the mortgage note. That she was under no restraint in changing her mind is likewise clear: only if a mortgagor can show substantial prejudice will a court in the exercise of its equity jurisdiction restrain the mortgagee from revoking its election to accelerate (see *Kilpatrick v Germania Life Ins. Co.*, 183 NY 163; *Ost v Mindlin*, 170 App Div 558, affd 224 NY 668; *Federal Land Bank of Springfield, Mass. v Shoemaker*, 147 Misc 308; cf. *Cohn v Spitzer*, 145 App Div 104, affd 207 NY 738; *Prudence Co. v Sussman*, 143 Misc 686). Having failed to suggest, let alone demonstrate, any prejudice resulting from plaintiff's revocation of her election to accelerate, defendant cannot invoke the court's equitable powers to restrict plaintiff's desired remedy. Having determined that plaintiff did not split her cause of action to recover on the debt, the next question is whether the partial foreclosure in the instant case precludes a second foreclosure on the ground that plaintiff's remedy as against the security was exhausted by the foreclosure and sale. Partial foreclosure is not universally accepted (see 59 CJS Mortgages, § 521; 3 Powell, Law of Real Property, par 463), but it appears to have had a long history of acceptance in this jurisdiction. Foreclosure and sale to recover only interest neither implicates the rule against splitting causes of action (interest and principal being two causes of action in debt, see *Union Trust Co. of Rochester v Kaplan*, 249 App Div 280; *Gregory v Jacobs*, 56 NYS2d 574, affd 269 App Div 921), nor the policy against vexatious use of foreclosure (see *Womens Hosp. in State of N. Y. v Sixty-Seventh St. Realty Co.*, 265 NY 226, 235; 95 ALR 1031, 1043). Decisions in the last century allowed foreclosure limited to interest then due, although there is no direct indication that this was partial foreclosure, i.e., that the mortgage survived as security for the outstanding principal (see *Malcolm v Allen*, 49 NY 448, 453-454; *Brinckerhoff v Thallhimer*, 2 Johns Ch 486; *Bank of Ogdensburgh v Arnold*, 5 Paige Ch 38; *Burt v Saxton*, 1 Hun 551, 554; *House v Eisenlord*, 30 Hun 90, affd 102 NY 713; *Asendorf v Meyer*, 8 Daly 278, 280; *Schieck v Donohue*, 92 App Div 330, 336; *Matter of City of New York [E. 29th St.]*, 247 App Div 648, 653, revd on other grounds, 273 NY 62). A judgment of foreclosure and sale with a continuing lien of the original mortgage has been held to be a mere procedural irregularity, though adversely affecting marketability of title *(Stuyvesant v Weil*, 41 App Div 551, affd 167 NY 421; see *Bank of Amer. v*

*Tierney Sons,* 252 NY 584; *Pretzfeld v Lawrence,* 34 Misc 329). Unabashed acceptance of the notion that a mortgagee could have multiple foreclosures of his mortgage does not appear in the lawbooks until after the Legislature amended section 1086 of the former Civil Practice Act (L 1927, ch 683, § 1) to add an explicit provision now contained in subdivision 2 of section 1351 of the Real Property Actions and Proceedings Law: "Where the mortgage debt is not all due, and * * * it appears that the mortgaged property is so circumstanced that a sale of the whole will be most beneficial to the parties, the final judgment * * * may, at the option of the mortgagee, direct that the whole property be sold to satisfy the debt then due with the costs of the action and expenses of the sale, subject to the continuing lien of the mortgage for the amount of the debt not then due and unpaid according to its terms." The first reported judicial reaction to the Legislature's *imprimatur* for this concept of mortgage severability was to castigate the legislative counsel who had drafted the provision and who later relied on it as private counsel; Special Term held that the change could only be made in the Real Property Law and not a procedural statute *(Bank of Amer. Nat. Assn. v Dames,* 135 Misc 391). But its validity has been assumed in later decisions *(Womens Hosp. in State of N. Y. v Sixty-Seventh St. Realty Co.,* 265 NY 226, 235, *supra; Prudence Co. v Sussman,* 143 Misc 686; *Haberkorn v Da Silva,* 210 NYS2d 391). Indeed, defendant concedes as much in its brief. Accordingly, defendant's argument that plaintiff proceeded improperly is without factual or legal merit. As to defendant's argument regarding the description of the mortgaged property in the complaint, it suffices for purposes of this appeal to note that any minor ambiguity in the original description, when measured solely by reference to the one map filed for the original development of the premises, was resolved by the additional use in other parts of the description of the later map, which clearly showed the released parcels to be but a small part of the mortgaged premises. Moreover, as this dispute related solely to the adequacy of the description in terms of pleading requirements, defendant's argument must be rejected under the liberal pleading policy of CPLR 3013, particularly in view of defendant's obvious familiarity with the boundaries of the premises and released parcels, as indicated by the fact that it had earlier drafted the legal description of the parcels in securing their release from the mortgage. Therefore, the judgment granting a partial foreclosure and sale should be affirmed. Hopkins, J. P., Damiani, Titone and Mangano, JJ., concur.