**Gordon M. SWOBODA and Margaret Swoboda, Appellants,**

v.

**WILSHIRE CREDIT CORPORATION and Charles A. Brown, Appellees.**

No. 13–97–415–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 20, 1998.

Rehearing Overruled Oct. 1, 1998.

---

George W. Vie III, Mills, Shirley, Eckel & Bassett, Galveston, for Appellant.

Samuel A. Houston, Michael F. Hord, Jr., Cruse, Scott, Henderson & Allen, Houston, for Appellee.

Before DORSEY, HINOJOSA, and RODRIGUEZ, JJ.

## OPINION

HINOJOSA, Justice.

This is an appeal from the grant of a summary judgment in favor of appellees, Wilshire Credit Corporation and Charles A. Brown. Appellants, Gordon M. Swoboda and Margaret Swoboda, present three issues complaining that the trial court erred by denying their motion for summary judgment, by granting appellees' motion for summary judgment, and by awarding appellees their attorney's fees and expenses. We affirm.

### Background

In February 1987, the Swobodas executed a $200,000 promissory note payable to Columbia Savings Association. The note was secured by a deed of trust on real property located in Galveston County, Texas. The Swobodas defaulted on their payments in 1989.

In April 1989, Columbia Savings sent the Swobodas a letter demanding payment and threatening foreclosure if the note was not paid or brought current. Notice was given of a non-judicial foreclosure sale scheduled for May 2, but the sale was never conducted. The Resolution Trust Corporation ("RTC") was appointed conservator of Columbia Savings on December 21, 1989.

On June 5, 1990, Gordon Swoboda filed for Chapter 11 bankruptcy in federal court. The Swobodas made post-petition payments on the note to the RTC totaling $39,396. In May 1993, Gordon Swoboda and the RTC presented an agreed order to the bankruptcy court. The agreed order allowed the RTC a secured claim in the Galveston property and noted that the payments made to the RTC had been applied to taxes, insurance, accrued interest owed up to the date Swoboda filed bankruptcy, and the principal balance on the promissory note. The agreed order was signed by the bankruptcy court on May 17, 1993. Swoboda's bankruptcy petition was dismissed with prejudice on September 30, 1994.

On June 27, 1995, the RTC assigned the note and deed of trust to Wilshire Credit. On November 22, 1995, Wilshire Credit sent the Swobodas a notice of default and declared its intention to accelerate the note if the default was not cured. The Swobodas responded in writing on December 11, 1995, apparently disputing the amount due on the note.

On May 11, 1996, Wilshire Credit again notified the Swobodas of its intent to accelerate the note and foreclose on the Galveston property if the default was not cured. The Swobodas replied on May 20, disputing the amount of the debt. Wilshire Credit provided information and figures on the amount owed by Gordon Swoboda on May 24.

On June 3, 1996, Wilshire Credit appointed Charles A. Brown as substitute trustee. On June 10, 1996, Brown sent Notices of Foreclosure and Posting to the Swobodas, informing them that the Galveston property was posted for foreclosure on July 2, 1996. On or about June 17, 1996, Gordon Swoboda telephoned Wilshire Credit and again asked for information concerning the debt, including reinstatement and payoff figures, plus a payment history. Following another telephone conversation on June 26, 1996, Wilshire Credit agreed to cancel the July 2 sale in order to allow the Swobodas time to obtain the funds needed to avoid foreclosure, and again provided reinstatement and payoff figures. The letter was mailed, certified, return receipt requested, to the address provided by Gordon Swoboda. Because the Swobodas failed to claim the letter, it was returned to Wilshire Credit on July 13, 1996.

Wilshire Credit then notified the Swobodas that the note had been accelerated, and the Galveston property was posted for foreclosure on the afternoon of September 3, 1996. On the morning of September 3, Gordon Swoboda filed for Chapter 13 bankruptcy in federal court. On November 26, 1996, his petition was dismissed with prejudice to refiling for 180 days.

On December 16, 1996, Wilshire Credit notified the Swobodas for the third time that their note was accelerated and the Galveston property was posted for foreclosure on January 7, 1997. The foreclosure sale was canceled on January 3, 1997, when the Swobodas were granted a temporary restraining order. On January 22, 1997, the trial court granted a temporary injunction against Wilshire Credit, but only ordered the street address of the Galveston property omitted from the next posting for foreclosure.

The Swobodas received Wilshire Credit's fourth notice of acceleration and foreclosure on February 10, 1997, informing them the property was to be sold on March 4, 1997. On February 13, Gordon Swoboda requested reinstatement figures on the debt, which Wilshire Credit furnished him on February 19. The foreclosure sale was canceled when Margaret Swoboda obtained a temporary restraining order on March 3, 1997.

On March 21, 1997, the Swobodas filed this suit requesting the trial court to permanently enjoin appellees from foreclosing on the Galveston property and filing suit to collect on the debt on the grounds that the debt and lien were time barred. Appellees did not file a counterclaim, but asked the trial court to deny the Swobodas' requests. Both sides filed motions for summary judgment. On May 16, 1997, the trial court denied the Swobodas' request for a permanent injunction and denied their motion for summary judgment. The trial court granted appellees' motion for summary judgment and ordered the Swobodas to pay $2500 "for delays due to the two Temporary Restraining Orders and fees and expenses incurred in defending

[against the Swobodas'] requests for Temporary Injunctions and claims in said lawsuits."

### Standard of Review

■ When both parties move for summary judgment and one motion is granted and the other is overruled, the appellate court should consider all questions presented to the trial court, including whether the losing party's motion should have been overruled. *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988). Each party must carry its own burden as the movant and, in response to the other party's motion, as the non-movant. *James v. Hitchcock Indep. Sch. Dist.*, 742 S.W.2d 701, 703 (Tex.App.—Houston [1st Dist.] 1987, writ denied). To prevail, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *Guynes v. Galveston County*, 861 S.W.2d 861, 862 (Tex.1993). When both parties move for summary judgment, this court has the authority to: (1) affirm the judgment, (2) reverse the judgment and render the judgment that the trial court should have rendered, or (3) reverse the judgment and remand the case to the trial court for further proceedings. *Members Mut. Ins. Co. v. Hermann Hosp.*, 664 S.W.2d 325, 328 (Tex.1984).

■ In order to sustain a summary judgment, we must determine that the pleadings and summary judgment evidence establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *McFadden v. American United Life Ins. Co.*, 658 S.W.2d 147, 148 (Tex.1983). We accept all evidence favorable to the non-movant as true, indulge the non-movant with every reasonable inference, and resolve any doubt in the non-movant's favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 549 (Tex.1985). When a party moves for summary judgment on several theories and the trial court enters summary judgment without specifying the ground relied upon, we affirm the summary judgment if any one of the theories advanced is meritorious. *Martinez v. Corpus Christi Area Teachers Credit Union*, 758 S.W.2d 946, 950 (Tex.App.—Corpus Christi 1988, writ denied).

### Acceleration of the Debt

The first issue presented by the Swobodas is whether Columbia Savings' exercise of its option to accelerate the maturity of the note began the statute of limitations running, even though there was no foreclosure. The Swobodas contend Columbia Savings' cause of action accrued in April 1989, when they defaulted on payments on the note, and that the April 10, 1989 notice of acceleration and notice of foreclosure they received began the running of limitations.

■ Although the statute of limitations is normally four years, Tex. Civ. Prac. & Rem. Code Ann. § 16.035 (Vernon 1986 & Supp. 1998), the Swobodas acknowledge the RTC was appointed conservator of Columbia Savings on December 21, 1989, and that the applicable statute of limitations is six years. Under 12 U.S.C. § 1821(d)(14), if a cause of action has already accrued, the six-year federal statute of limitations will begin running as of the date the conservator is appointed. A successor in interest is entitled to the benefit of the six-year statute of limitations. *Jackson v. Thweatt*, 883 S.W.2d 171, 174 (Tex.1994). The Swobodas contend the limitations, which began running on April 10, 1989, were restarted on December 21, 1989, and expired on December 22, 1995.

■ A party moving for summary judgment on the basis of limitations must conclusively establish the bar of limitations. *Jennings v. Burgess*, 917 S.W.2d 790, 793 (Tex. 1996). It makes no difference whether the opposing party fails to address the issue. *Oram v. General Am. Oil Co. of Tex.*, 513 S.W.2d 533, 534 (Tex.1974) (non-movant has no burden in response to a summary judgment motion unless the movant has conclusively established his defense).

■ The question of when a cause of action accrues is a matter of law for the court to decide. *Moreno v. Sterling Drug*, 787 S.W.2d 348, 351 (Tex.1990). In applying the statute of limitations, a cause of action is said to accrue when a set of facts come into existence which give a claimant a right to seek a remedy in the courts. *Robinson v. Weaver*, 550 S.W.2d 18, 19 (Tex.1977). If demand is an integral part of a cause of

action or a condition precedent to the right to sue, the statute of limitations does not begin to run until demand is made. *Ocean Transport, Inc. v. Greycas, Inc.,* 878 S.W.2d 256, 267 (Tex.App.—Corpus Christi 1994, writ denied). The action of the obligee in exercising his option to accelerate payment and declare all of the payments of a series due does not render irrevocable his right to waive the exercise of the option. *Denbina v. City of Hurst,* 516 S.W.2d 460, 463 (Tex.Civ.App.—Tyler 1974, no writ).

■ The deed of trust which serves as security for the promissory note contains an acceleration clause in paragraph 19. In relevant part, the clause provides:

> Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law.

> * * *

> If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law. Lender shall mail a copy of the notice of sale to the Borrower in the manner prescribed by applicable law. Sale shall be made at public venue between the hours of 10 a.m. and 4 p.m. on the first Tuesday in any month.

Clearly this is an optional acceleration clause. Although the Swobodas' default gave Columbia Savings the right to exercise the clause, Columbia Savings was not obligated to do so. *Jasper Fed. Sav. & Loan Ass'n v. Reddell,* 730 S.W.2d 672, 674 (Tex.1987). No cause of action would accrue until the clause was exercised or the note matured, despite the occurrence of default. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.035(e) (Vernon 1986 & Supp.1998); *Hughes v. Stovall,* 135 S.W.2d 603, 606 (Tex.Civ.App.—Amarillo,

1939, writ dism'd). The Swobodas' default alone did not trigger acceleration of the promissory note.

■ The Swobodas next argue that Columbia Savings accelerated the note by sending a notice of acceleration and a copy of a Notice of Non–Judicial Foreclosure Sale to them dated April 10, 1989, thus starting the running of limitations. It is undisputed that no further action followed.

■ Exercise of the right of acceleration requires the mortgagee to make a clear, positive, and unequivocal declaration in some manner of the exercise thereof, *followed by* affirmative action towards enforcing the declared intention. *Crow v. Heath,* 516 S.W.2d 225, 228 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.) (emphasis added); *see also Bonilla v. Roberson,* 918 S.W.2d 17, 21 (Tex. App.—Corpus Christi 1996, no writ) (because foreclosure is a harsh method of collecting debts, strict compliance with provisions of note is called for); *Jernigan v. O'Brien,* 303 S.W.2d 515, 516 (Tex.Civ.App.—Austin 1957, no writ) (quoting with approval *Curtis v. Speck,* 130 S.W.2d 348, 351 (Tex.Civ.App.—Galveston 1939, writ ref'd)). Giving "follow" its ordinary meaning[1] and examining case law, we find a declaration alone does not amount to an election to accelerate without accompanying enforcement action, *i.e.,* steps to execute foreclosure on the real property. *Shepler v. Kubena,* 563 S.W.2d 382, 385 (Tex. Civ.App.—Austin 1978, no writ); *National Debenture Corp. v. Smith,* 132 S.W.2d 429, 431 (Tex.Civ.App.—Galveston 1939, writ dism'd judgm't corr.); *City Nat'l Bank v. Pope,* 260 S.W. 903, 905 (Tex.Civ.App.—San Antonio 1924, no writ); *see also Federal Deposit Ins. Corp. v. Massingill,* 24 F.3d 768, 776 (5th Cir.1994); *Hammann v. H.J. McMullen & Co.,* 122 Tex. 476, 62 S.W.2d 59, 61 (1933) (when holder of note declares it accelerated, *and* brings his suit to enforce payment of it, that fixes time from which to calculate four-year bar of limitations). Even

---

1. When a word does not have a specific statutory definition, we use its ordinary meaning. TEX. GOV'T CODE ANN. § 312.002 (Vernon 1988); *National Med. Enter., Inc. v. Godbey,* 924 S.W.2d 123, 141 (Tex.1996); *City of Harlingen v. Vega,* 951 S.W.2d 25, 30 (Tex.App.—Corpus Christi 1997, no writ). The ordinary meaning of "follow" is to happen directly after something else. CAMBRIDGE DICT. OF INT'L ENGLISH 543 (1st ed.1995).

if a creditor exercises the option to accelerate and makes a declaration to that effect, the election to accelerate can be revoked or withdrawn at any time, so long as the debtor has not detrimentally relied on the acceleration. *Denbina,* 516 S.W.2d at 463; *see also In re Adu–Kofi,* 94 B.R. 14, 15 (Bankr.D. R.I.1988) (citing *In re LHD Realty Corp.,* 726 F.2d 327, 331 n. 4 (7th Cir.1984)); *Golden v. Ramapo Improvement Corp.,* 78 A.D.2d 648, 432 N.Y.S.2d 238, 241 (1980).

The notice of acceleration received by the Swobodas declares, in relevant part, that Columbia Savings:

> has elected to accelerate the maturity of the Note and has declared the Note immediately due and payable. Demand is hereby made upon you, all guarantors and all others who may be liable for the payment of the Note, that the entire unpaid principal balance of the Note and all accrued interest, attorney's fees and other changes [sic] now lawfully due and owing thereon ... be immediately paid in full.
>
> At least twenty-one (21) days prior to May 2, 1989, a Notice of Non–Judicial Foreclosure Sale (the "Notice") will be posted at the courthouse door of Galveston County, Texas, and a copy of the Notice will be filed in the office of the County Clerk of Galveston County, Texas. A copy of the Notice is enclosed herewith.

Clearly, a demand for payment was made. However, the language in the second part of

the clause tracks section 51.002 of the property code which prescribes the steps necessary to exercise the power of sale. *See* TEX. PROP.CODE ANN. § 51.002(b) (Vernon 1995).[2]

■ If we construe the clause strictly,[3] we find that Columbia Savings had to do four things to fully exercise its right of acceleration in accordance with the statute and the provisions of the promissory note and deed of trust: (1) make a demand for immediate payment, (2) mail a copy of the notice of sale to the Swobodas, (3) post notice of the time, place and terms of sale at the courthouse door, and (4) file a copy of the notice of the time, place and terms of sale with the county clerk. It is undisputed that Columbia Savings never conducted a foreclosure sale on the Galveston property, although its reasons for not doing so are absent from the record. We find no evidence in the record that Columbia Savings actually posted the property for sale or filed the notice with the Galveston County Clerk. *See* TEX. PROP.CODE ANN. § 51.002(f) (Vernon 1995) (public has access to copies of filed foreclosure notices).

Based on the evidence before us, it appears Columbia Savings did not comply with the contractual or statutory conditions necessary to exercise its option to accelerate the note as declared, and abandoned the acceleration. *See Massingill,* 24 F.3d at 776 (holding creditor's failure to take promised legal action illustrated lack of affirmative action

---

**2.** Section 51.002(b) provides:

   (b) Notice of the sale, which must include a statement of the earliest time at which the sale will begin, must be given at least 21 days before the date of the sale:

   (1) by posting at the courthouse door of each county in which the property is located a written notice designating the county in which the property will be sold;

   (2) by filing in the office of the county clerk of each county in which the property is located a copy of the notice posted under Subdivision (1); and

   (3) by the holder of the debt to which the power of sale is related serving written notice of the sale by certified mail on each debtor who, according to the records of the holder of the debt, is obligated to pay the debt.

**3.** As a rule, acceleration clauses are strictly construed with preference given to a construction that will avoid the forfeiture and prevent acceler-

ation of the debt to maturity. *Shumway v. Horizon Credit Corp.,* 801 S.W.2d 890, 893 (Tex.1991) (harshness of acceleration option requires both strict reading of terms of option and notice to debtor); *Ramo, Inc. v. English,* 500 S.W.2d 461, 466 (Tex.1973) (citing *Motor & Indus. Fin. Corp. v. Hughes,* 157 Tex. 276, 302 S.W.2d 386, 394 (Tex.1957)); *Purnell v. Follett,* 555 S.W.2d 761, 763 (Tex.Civ.App.—Houston [14th Dist.] 1977, no writ) (citing *Crow v. Heath,* 516 S.W.2d 225, 229 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.)) (enforcement of acceleration clause in deed of trust must stand strict scrutiny of court; exercise of power of sale must strictly conform to terms and conditions in trust instrument). Although our research reveals that this rule has always been applied where a debtor is seeking to prevent acceleration, rather than argue its occurrence as in the instant case, we find no cases instructing that the rule is inapplicable where a creditor seeks to avoid a finding of acceleration.

necessary for valid acceleration); *Shepler*, 563 S.W.2d at 385 (foreclosure not carried out); *Pope*, 260 S.W. at 905 (bank's inactivity subsequent to notice constituted abandonment of acceleration); *see also Davis v. Pletcher*, 727 S.W.2d 29, 35 (Tex.App.—San Antonio 1987, writ ref'd n.r.e.) (until foreclosure actually posted, no event to trigger filing of an application for temporary injunction occurred). The Swobodas neither asserted nor presented any evidence that they relied on the acceleration, took any responsive action, or in any way changed their position as a result of the notice.

The Swobodas cite *McLemore v. Pacific S.W. Bank, FSB*, 872 S.W.2d 286, 291 (Tex. App.—Texarkana 1994, writ dism'd by agreem't), for the proposition that "a notice of intent to accelerate followed by a notice of trustee's sale constitutes a notice of acceleration," even though the foreclosure sale was not conducted. The Swobodas misstate the facts of the case. The property at issue in *McLemore* was, in fact, sold at a foreclosure sale following the notices. The question presented was whether proper notice of acceleration had been given. In the instant case, the question is not one of adequate notice of acceleration, but of exercise of the right of acceleration.

In *Shepler v. Kubena*, the trustee failed to proceed with a sale after posting a notice of foreclosure. 563 S.W.2d at 383–84. The Swobodas argue the *Shepler* court found the statute of limitations did not begin to run only because the note had not been accelerated. The Swobodas misread the facts and the court's holding. Shepler did not assert a lack of notice of acceleration or notice of foreclosure. Prior to the date of the foreclosure sale, Shepler persuaded the lender to agree to abandon the foreclosure and assign the note and lien to a new holder. *Shepler*, 563 S.W.2d at 385. The court implied that this action resulted in non-exercise of the option to accelerate, thus preventing the statute of limitations from taking effect. *Id.*

■ It appears Columbia Savings abandoned its attempt to accelerate the Swobodas' debt, thus limitations did not begin to run at that time. Even if we accept the Swobodas' assertions and find limitations began to run in 1989, there is abundant evidence in the record showing that the running of limitations was canceled or repeatedly tolled.

■ The record shows the Swobodas subsequently resumed making irregular payments on the debt more than a year after the notice of acceleration and proposed date of foreclosure was received from Columbia Savings. They paid Columbia Savings' successor, the RTC, a total of $39,396 between June 5, 1990 and May 17, 1993. When a declaration of acceleration is not followed by affirmative action to enforce it, and payments are made on the debt, even though irregularly done, the contract is reaffirmed, and the statute of limitations does not run. *Smith*, 132 S.W.2d at 431 (quoting *Pope*, 260 S.W. at 905); *see also Massingill*, 24 F.3d at 777. Although these payments were made after Gordon Swoboda filed for bankruptcy, from the record before us, it does not appear that all of the payments were made in compliance with orders of the bankruptcy court. We find only one order in the record, requiring payments of $1,857 per month for a period of five months in 1991. As this would account for only $9,285 of the total paid, we can only infer the remaining payments, totaling $30,111, were voluntary. There is a notation in a statement presented to the bankruptcy court that a substantial portion of the payments were made pursuant to agreements between the parties on September 30, 1991, and November 4, 1991. The statement is uncontroverted by the Swobodas.

■ The record also contains documents from Gordon Swoboda's bankruptcy filings. Assuming *arguendo* that the payments to the RTC did not constitute reaffirmation of the contract, and assuming limitations began running in 1989, we conclude the tolling effects of the two bankruptcy filings extended the expiration of limitations far beyond December 1995.

■ Gordon Swoboda's first filing for Chapter 11 bankruptcy was made on June 5, 1990. Under 11 U.S.C. § 362 (1985), an automatic stay is granted on all judicial proceedings that were or could have been commenced against the debtor before the bank-

ruptcy was filed. It is an established rule in Texas that "where a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during which he is thus prevented should not be counted against him in determining whether limitations have barred his right." *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 157 (Tex.1991) (quoting *Walker v. Hanes*, 570 S.W.2d 534, 540 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.)); *Weisz v. Spindletop Oil & Gas Co.*, 664 S.W.2d 423, 425 (Tex.App.—Corpus Christi 1983, no writ); *Cavitt v. Amsler*, 242 S.W. 246, 249 (Tex.Civ.App.—Austin 1922, writ dism'd). The automatic stay provided by section 362 remains in effect until the bankruptcy proceeding is concluded or the property at issue is no longer in the bankruptcy estate. *See* 11 U.S.C. § 362(a)(1), (c); *see also Baytown State Bank v. Nimmons*, 904 S.W.2d 902, 905 (Tex.App.—Houston [1st Dist.] 1995, writ denied); *Lawrenson v. Global Marine, Inc.*, 869 S.W.2d 519, 523 (Tex.App.—Texarkana 1993, writ denied); *Tracy v. Annie's Attic, Inc.*, 840 S.W.2d 527, 542 (Tex.App.—Tyler 1992, writ denied); *Haun v. Steigleder*, 830 S.W.2d 833, 834 (Tex.App.—San Antonio 1992, no writ).

■ The Swobodas assert in their brief, without argument or citation, that 11 U.S.C. § 108(c) prevents tolling of the statute of limitations unless the limitations period would expire within thirty days after the automatic stay terminated. Section 108(c) actually provides that where limitations have not expired before the petition in bankruptcy is filed, the period will be extended until the *later* of the expiration of limitations, "including any suspension of such period" ... or thirty days after notice of the stay's termination; it does not abbreviate the limitations period. 11 U.S.C. § 108(c) (1985). Nor does this section preempt the rights of states to toll their own statutes of limitations. *See Peterson v. Texas Commerce Bank–Austin, N.A.*, 844 S.W.2d 291, 294 (Tex.App.—Austin 1992, no writ) (quoting *Pettibone Corp. v. Easley*, 935 F.2d 120, 121 (7th Cir.1991)). As section 108 does not conflict with Texas common law, we conclude the statute of limitations was tolled, in accordance with this state's well-established rule, beginning the

day Swoboda filed for bankruptcy. *See Peterson*, 844 S.W.2d at 294 (applying *Mahaney & Higgins* in context of bankruptcy).

■ The Swobodas alternatively contend the tolling effect of the bankruptcy filed in June 1990, which was not dismissed until September 30, 1994, was foreshortened by the bankruptcy court. An agreed order of the bankruptcy court, dated March 22, 1991, provided that: (1) the RTC, acting as conservator of Columbia Savings, would accept monthly payments of $1,857 from Gordon Swoboda from April 1991 through August 1991, and (2) the automatic stay would terminate on August 31, 1991. If Swoboda failed to make two payments prior to August 31, 1991, the stay would terminate sooner. Although Gordon Swoboda claimed in his affidavit that he failed to make payments in April and May, thus terminating the stay on May 15, 1991, the entries of the bankruptcy court do not reflect entry of a premature termination of the stay. Furthermore, appellees presented authenticated business records of Gordon Swoboda's payment history on the debt, showing that payments of $1,857 were received for each month between April and August 1991, though not always paid on the 15th day of each month. The Swobodas raised no objections to this summary judgment evidence. Furthermore, the five payments of $1,857 were included by the RTC in determining that Swoboda had paid a total of $39,393. The Swobodas did not object to the accuracy of this figure. Finally, a copy of this payment record was provided to the Swobodas in June 1996, who did not contest its accuracy. The documented evidence establishes that the Swobodas did not fail to make any court-ordered payments between April 1991 and August 1991.

If we assume the automatic stay was in effect from June 5, 1990 through August 31, 1991, we conclude the statute of limitations was tolled 453 days beyond December 21, 1995. Even if we assume the stay terminated on May 15, 1991, as the Swobodas insist, instead of August 31, 1991, we conclude the statute of limitations was tolled 345 days beyond December 21, 1995. Wilshire Credit began its efforts to foreclose on the Galves-

ton property on June 10, 1996, well within both the 345 and 453 day extensions.

On August 12, 1996, a date still within the extended period, Wilshire Credit again attempted to foreclose. The property was posted for foreclosure on the afternoon of September 3, 1996. Gordon Swoboda filed for bankruptcy protection for the second time on the morning of September 3, 1996, which tolled the running of limitations under the automatic stay granted by 11 U.S.C. § 362. His petition was dismissed on November 26, 1996. Limitations were thus tolled for an additional eighty-five days beyond the 345 or 453 day extensions.

■ Nevertheless, the Swobodas raise one final argument that the statute of limitations ran in December 1995, despite the events discussed above. In their response to appellees' motion for summary judgment, the Swobodas assert that Margaret Swoboda never acknowledged the debt, requested reinstatement figures, or expressed an intention to pay the debt. In her sworn affidavit, Margaret Swoboda adds that she has never filed for bankruptcy. Essentially, the Swobodas contend that even if the statute of limitations has not run against Gordon Swoboda, it has run against Margaret Swoboda. As the debt is not divided between them, it must be barred as to both of them. This argument does not support the Swobodas' defense of limitations.

■ The original loan was signed by both Gordon and Margaret Swoboda, a husband and wife, and they are still married. There is no evidence to suggest the indebtedness represented by the note is not a community obligation. *Cockerham v. Cockerham,* 527 S.W.2d 162, 169–71 (Tex.1975) (it is well settled that debts undertaken during marriage are presumed to be community debts); *Broussard v. Tian,* 156 Tex. 371, 295 S.W.2d 405, 406 (Tex.1956) (note executed during marriage is presumed to be community obligation). Either spouse can be held liable on a community debt. *Giles v. First Nat'l Bank of Brownfield,* 257 S.W.2d 945, 947 (Tex.Civ. App.—Amarillo 1953, no writ) (one spouse can be held liable on a community debt); *see also Nelson v. Citizens Bank & Trust Co. of Baytown, Tex.,* 881 S.W.2d 128, 131 (Tex.

App.—Houston [1st Dist.] 1994, no writ) (either spouse can incur contractual liability that will bind community property). Without deciding the applicability of limitations to Margaret Swoboda, there is no question limitations have not barred Gordon Swoboda's liability on the debt.

The Swobodas filed this suit requesting the trial court to permanently enjoin appellees from foreclosing on the Galveston property and filing suit to collect on the debt on the grounds that the debt and lien were barred by limitations. Because the Swobodas failed to prove the debt and lien were time barred, we hold the trial court did not err in denying their motion for summary judgment.

Appellees moved for summary judgment, among other grounds, on the ground that limitations had not run. Because the summary judgment evidence establishes the debt and lien were not barred by limitations, we hold the trial court did not err in granting appellees' motion for summary judgment on this ground.

In light of our disposition of the first issue, it is not necessary to address appellants' second issue—whether appellees proved that the Swobodas waived or were estopped from asserting limitations.

*Award for Delays and Attorney's Fees*

■ The third issue raised by the Swobodas complains of the trial court's award of attorney's fees to appellees. The trial court awarded appellees $2,500 "for delays due to the two Temporary Restraining Orders and fees and expenses incurred in defending [against the Swobodas'] requests for Temporary Injunctions and claims in said lawsuits." The Swobodas argue there is no basis in law for the trial court's award, and complain, among other things, that a demand for such fees was not presented to them for payment.

■ Appellees contend they are entitled to damages under section 65.031 of the Texas Civil Practice and Remedies Code, which provides for the assessment of damages upon dissolution of an injunction obtained for purposes of delay. At the time this suit was filed, appellees were subject to a temporary

restraining order, but the rule remains applicable. *See Craddock v. Overstreet*, 435 S.W.2d 607, 609 (Tex.Civ.App.—Tyler 1968, writ ref'd n.r.e.).

■ It has long been the rule in Texas that attorney's fees incurred in procuring the dissolution of an injunction are not regarded as elements of damage, even though an injunction has been wrongfully obtained. *Galveston, H. & S.A. Ry. Co. v. Ware*, 74 Tex. 47, 11 S.W. 918, 920 (1889) (citing *Oelrichs v. Spain*, 15 Wall. 211, 82 U.S. 211, 230–31, 21 L.Ed. 43 (1872)); *see also Neese v. Radford*, 83 Tex. 585, 19 S.W. 141, 142 (1892) (attorney's fees or costs incurred in another suit are not recoverable as actual damages); *Carpenter v. First Nat'l Bank of Sour Lake*, 53 Tex.Civ.App. 23, 114 S.W. 904, 906 (1908, no writ) (suggesting attorney's fees did not fall within scope contemplated by statute).[4] Therefore, the trial court could not award appellees their attorney's fees. However, the trial court's order also provides that the $2,500 award is for delays brought about by the two restraining orders filed by the Swobodas.

■ The assessment of damages under section 65.031 is discretionary with the court. *Kelton v. Jones*, 253 S.W. 868, 869 (Tex.Civ. App.—Fort Worth 1923, no writ); *Carpenter*, 114 S.W. at 906. After reviewing the record, we find ample evidence of the Swobodas' tactics to delay Wilshire Credit's efforts to carry through with its right to collect the debt by foreclosing on the Galveston property. In May 1996, Wilshire Credit notified the Swobodas of its intent to accelerate the note. The Swobodas responded by disputing the amount due, but made no reply or objection to the data provided to them by Wilshire Credit. When informed in June 1996 that a foreclosure sale on the Galveston property had been scheduled, Gordon Swoboda again requested information about the debt, including reinstatement and payoff figures. Wilshire Credit agreed to cancel the foreclosure sale and allow the Swobodas time to raise the

funds to avoid foreclosure. Although current reinstatement and payoff figures were provided to the Swobodas once again, they failed to claim the certified letter containing the data, even though it was sent to the address the Swobodas provided in writing and used on nearly all written correspondence. Although the Swobodas received a duplicate copy of the information in the unclaimed letter by telecopier transmission, they apparently took no action to obtain the money necessary to bring the debt current. When Wilshire Credit again posted the property for foreclosure on the afternoon of September 3, 1996, Gordon Swoboda filed a second petition for bankruptcy protection on the morning of September 3, 1996; it was dismissed in November with prejudice, preventing him from refiling for six months. Wilshire Credit promptly acted again to foreclose on the property and scheduled the sale for January 7, 1997. The Swobodas obtained a restraining order on January 3, 1997, forcing cancellation of the sale. Their request for a temporary injunction, heard on January 22, 1997, did not lead the court to enjoin the sale of the property. In February 1997, Wilshire Credit made its final effort to collect on the debt by announcing it would sell the property on March 4, 1997. Again, the Swobodas requested reinstatement figures, which were provided. Margaret Swoboda then obtained a restraining order the day before the sale. Shortly thereafter, the Swobodas filed this suit seeking a permanent injunction, which the trial court denied.

It is reasonable to conclude that the Swobodas resorted to obtaining the restraining orders after all other delaying tactics were exhausted or became ineffective. There is no evidence the Swobodas made any sincere attempts to raise the money owed to Wilshire Credit. We hold the trial court did not abuse its discretion in determining that the two temporary restraining orders were obtained solely for purposes of delay and that $2,500 was reasonable damages for such delay.

---

4. Tex.Rev.Stat. 1895, art. 3010, which was applied in this case, stated: "Upon a dissolution of an injunction either in whole or in part on final hearing where the collection of money has been enjoined, if the court be satisfied that the injunction was obtained only for delay, damages thereon may be assessed by the court at ten per cent, on the amount released by the dissolution of the injunction." *Compare with* TEX. CIV. PRAC. & REM. CODE § 65.031 (Vernon 1997).

We affirm the trial court's orders denying the Swobodas' motion for summary judgment, granting appellees' motion for summary judgment, and ordering the Swobodas to pay $2,500 as damages under section 65.031 of the Texas Civil Practice and Remedies Code.