TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00258-CV






Sarasota, Inc., Appellant



v.



David S. Ballew and Fred Bomar, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 98-03360, HONORABLE PAUL DAVIS, JUDGE PRESIDING 







 Sarasota, Inc. appeals from a take-nothing summary judgment rendered against its
claims on a promissory note made by David Ballew and secured by deeds of trust on real property
owned by Ballew and Fred Bomar. Sarasota contends that the trial court erred by concluding that
the statute of limitations barred its attempt to foreclose on the real property. Sarasota argues that
the trial court erroneously found that a demand letter sent in 1989 by its predecessor noteholder
resulted in an acceleration of the note, thus starting the limitations period. Sarasota argues that
instead the note matured by its own terms in 1995. We will reverse the judgment and remand the
cause to the district court.


Background


 In October 1987, Ballew made a promissory note payable to Austin Savings that
he did not pay in full. Payments were due on the first of every month, with a balloon payment
due November 1, 1995. The note was secured by liens on properties owned separately by Ballew
and Bomar. The note states that the "[l]ender may without notice or demand, declare the entire
unpaid principal balance and accrued interest at once due and payable if: (i) There is default in the
payment of any installment of principal, interest or any other sum required to be paid under the
terms of the Loan documents . . . ." The deeds of trust permit acceleration through clauses that
are identical to each other except that the bracketed language about "Grantor" (which refers to
Bomar) is absent from the deed of trust covering Ballew's property:


 Upon [Grantor's or] Borrower's breach of any covenant or agreement of Borrower
[or Grantor] in this Instrument, including, but not limited to, the covenants to pay
when due any sums secured by this Instrument, Lender at Lender's option may
declare all of the sums secured by this Instrument to be immediately due and
payable without further demand and may invoke the power of sale and any other
remedies permitted by applicable law or provided herein.


Ballew failed to make the payment due on May 1, 1989 and made no payments thereafter.

 On November 28, 1989, counsel for Austin Savings sent a demand letter to Ballew
stating the following:

 

 This law firm represents the above named Lender, the holder of a certain
Promissory Note . . . .


* * *



 The Lender has advised us and we hereby advise you that the Note is in default. 
In order to cure the default, you must pay all delinquent amounts due as follows:


 

Payment Due Payment Amount

May 1, 1989 $1,177.98

June 1, 1989 $1,177.98

July 1, 1989 $1,177.98

August 1, 1989 $1,177.98

September 1, 1989 $1,177.98

October 1, 1989 $1,177.98

November 1, 1989 $1,177.98

Late charges $ 612.03

Attorney's fees $ 100.00


Total $8,957.89


 In addition, a payment of $1,177.98 is due on December 1, 1989. This is
to advise you that unless the Loan is brought current by 10:00 A.M. C.S.T. on
December 28, 1989, the Lender intends to (1) exercise the Lender's rights under
the Deed of Trust to secure foreclosure sale of the Property, and (2) exercise at the
Lender's discretion any other rights or remedies available under the law or under
the Note, Deed of Trust and/or other documents executed in connection with the
loan.


 In the event the collateral is sold at foreclosure sale in an amount
insufficient to satisfy the entire unpaid balance of principal, accrued interest or any
other amount payable pursuant to the terms of the Note and the Deed of Trust (such
as attorney's fees, expenses and late charges), you may be liable for the deficiency.


 Lender's acceptance of late payments in the past shall not be construed as
a waiver of its right to demand timely payments in the future. This is formal notice
to you that Lender now requires all future payments to be made in a timely manner
in accordance with the terms of the Note.


 Nothing contained in this letter shall be deemed a waiver of any rights,
remedies or recourses available to the Lender.


Austin Savings took no further action on the note.

 On November 29, 1989, the Office of Thrift Supervision appointed the Resolution
Trust Corporation as receiver of Austin Savings. The RTC eventually sold the Ballew note and
deeds of trust to Sarasota.

 Ballew and Bomar filed suit on March 31, 1998, seeking temporary and permanent
injunctive relief preventing Sarasota from collecting on the note or foreclosing on the deeds of
trust. After appellees received temporary relief, Sarasota filed a counterclaim on July 17, 1998,
seeking a declaration that the note was valid and in default; that appellees breached the note
contract; that Sarasota's right to collect was not waived, exhausted, or time-barred; and that
Sarasota could foreclose on the property secured by the deeds of trust. 

 The parties then filed motions for summary judgment that did not cross directly. 
Appellees moved for a partial summary judgment that the note was barred by the statute of
limitations and that the deeds of trust were null and void. The district court granted appellees'
motion for partial summary judgment on June 7, 1999, concluding that, because the note was
barred by the statute of limitations, the deeds of trust were unenforceable and Sarasota could take
nothing by its counterclaim. Sarasota then moved for summary judgment against appellees' claims
of usury and other violations. Upon appellees' agreement to dismiss their remaining claims
(rendering Sarasota's motion for summary judgment moot) and the parties' stipulations to the
reasonableness of the amount of appellees' attorney's fees, the district court rendered judgment
making the partial summary judgment final.

 Sarasota raises two issues on appeal. It argues first that Austin Savings did not
accelerate the note; Sarasota contends the November 1989 demand letter was only a notice of
intent to take further action on a delinquent note and was not the affirmative action necessary to
trigger acceleration. Sarasota also argues that the appellees' waiver of their right to notice and
demand did not convert optional acceleration clauses into ones triggered automatically by default.



Discussion


 A party moving for summary judgment must establish its right to summary
judgment on the issues expressly presented to the trial court by conclusively proving all elements
of the movant's cause of action or defense as a matter of law. See Tex. R. Civ. P. 166a(c);
Havlen v. McDougall, 22 S.W.3d 343, 345 (Tex. 2000); Rhone-Poulenc, Inc. v. Steel, 997
S.W.2d 217, 223 (Tex. 1999); Walker v. Harris, 924 S.W.2d 375, 377 (Tex. 1996). A defendant
moving for summary judgment on an affirmative defense has the burden to conclusively establish
that defense. See Havlen, 22 S.W.3d at 345; Rhone-Poulenc, 997 S.W.2d at 223. On appeal, the
movant still bears the burden of showing that there is no genuine issue of material fact and that
the movant is entitled to judgment as a matter of law. See Rhone-Poulenc, 997 S.W.2d at 223.

 When a cause of action on a note accrues depends on the terms of the note and the
actions of the parties. A cause of action on a note accrues when the note matures, whether by its
terms or by acceleration. See Swoboda v. Wilshire Credit Corp., 975 S.W.2d 770, 776 (Tex.
App.--Corpus Christi 1998, pet. denied); see also Tex. Civ. Prac. & Rem. Code Ann. § 16.035(e)
(West Supp. 2001). If a lender accelerates the maturity of a note, the statute of limitations begins
to run from the date of an effective acceleration. See McLemore v. Pacific Southwest Bank, FSB,
872 S.W.2d 286, 292-93 (Tex. App.--Texarkana 1994, writ dism'd by agr.). A holder of a note
wishing to accelerate the indebtedness must ordinarily provide the maker of the promissory note
with both (1) notice of the holder's intent to accelerate and the maker's opportunity to cure the
default, and (2) notice of the acceleration itself. Ogden v. Gibraltar Sav. Ass'n, 640 S.W.2d 232,
233-34 (Tex. 1982). The maker may waive the right to these notices. Id. Clear and unequivocal
declarations of intent to accelerate maturity must be followed by affirmative action towards
enforcing the declared intention. See Curtis v. Speck, 130 S.W.2d 348, 351 (Tex. Civ. App.--
Galveston 1939, writ ref'd); see also City Nat'l Bank v. Pope, 260 S.W. 903, 905 (Tex. Civ.
App.--San Antonio 1924, no writ).

 Appellees have not shown conclusively that Austin Savings clearly and
unequivocally expressed an intent to accelerate. The November 1989 letter does not mention
acceleration. Even if acceleration is implicit in the mention of foreclosure, the letter does not state
unequivocally that acceleration will occur or when it will occur. At most, the letter informed
appellees that a failure to bring payments on the note current by December 28, 1989 might result
in acceleration at some point. In that respect, it resembles the letter found ineffective to induce
acceleration in Ogden. 640 S.W.2d at 234. There, the court found that the statement in the
demand letter that "failure to cure such breach on or before said date may result in acceleration"
gave no clear and unequivocal notice that the holder would exercise the option, but "merely
restated the option conferred in the deed of trust." Id. (emphasis added). The court held that the
lender's subsequent foreclosure was therefore invalid. Id. Though Austin Savings's statement that
it "intends" to exercise its rights is somewhat more positive than the Ogden holder's statement that
it "may" exercise its rights, the difference is scarcely appreciable absent a more specific
declaration. Affidavits from former Austin Savings officials stating that Austin Savings "was
going forward with the exercise of its legal rights" to collect the balance due and pursue the
collateral do not make the letter unequivocal; the November 1989 letter indicates movement
toward acceleration and foreclosure, but it is neither unequivocal nor sufficient alone.

 Even if the November 1989 letter is an implicit and effective notice of intent to
accelerate, the record does not show conclusively that the maturity of the note was actually
accelerated. Neither the note nor the letter sets up an automatic acceleration schedule upon default
or on a particular date. Nor does the record reveal that a holder of the note took an affirmative
action towards enforcing the declared intent to accelerate after the November letter. Courts insist
that an unequivocal expression of intent to accelerate must be "followed by affirmative action
towards enforcing the declared intention." See Swoboda, 975 S.W.2d at 776 (italics in original;
court emphasizes giving "follow" its ordinary meaning); see also Shepler v. Kubena, 563 S.W.2d
382, 385 (Tex. Civ. App.--Austin 1978, no writ); Pope, 260 S.W. at 905. There is no evidence
that Austin Savings took any action after the November 28, 1989 letter; the implication is that it
took no action because it went into receivership the next day. There is no evidence the RTC or
any holder before Sarasota did anything to pursue collection of the note. The only action in
evidence other than the November letter was the loan committee's referral of the note to an
attorney for collection before the November letter; that referral, however, did not follow the
demand letter. We conclude that there is no evidence of any action by a holder toward
acceleration following the November 1989 demand letter and before the November 1995 maturity
date.

 Finally, appellees have not shown conclusively that the note was automatically
accelerated by their default. The note and deeds of trust do not require acceleration upon default;
the holder must choose to accelerate the indebtedness. Even if appellees waived their right to
notice of intent to accelerate and of acceleration, a holder must clearly and unequivocally exercise
its option to accelerate. See Kehoe v. Lambert, 673 S.W.2d 576, 577-78 (Tex. App.--Houston
[14th Dist.] 1982, writ ref'd n.r.e.). The summary-judgment record lacks evidence of
acceleration.

 Because appellees have not shown conclusively that the maturity date was
accelerated, there is at least a fact question regarding whether Sarasota filed within the statute of
limitations period. The limitations period triggered by the RTC's involvement is six years. See
12 U.S.C. § 1821(d)(14). Absent acceleration, the note matured on its own terms on November
1, 1995 and the statute will not expire until November 2001. Because there is a fact question
regarding the maturity date and thus whether Sarasota's suit and attempted foreclosure are time
barred, we conclude that the district court erred by granting summary judgment in appellees' favor
based on the statute of limitations.

 We reverse the judgment and remand the cause for further proceedings.



 

 Mack Kidd, Justice


Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Reversed and Remanded

Filed: February 28, 2001

Do Not Publish


ly that Austin Savings clearly and
unequivocally expressed an intent to accelerate. The November 1989 letter does not mention
acceleration. Even if acceleration is implicit in the mention of foreclosure, the letter does not state
unequivocally that acceleration will occur or when it will occur. At most, the letter informed
appellees that a failure to bring payments on the note current by December 28, 1989 might result
in acceleration at some point. In that respect, it resembles the letter found ineffective to induce
acceleration in Ogden. 640 S.W.2d at 234. There, the court found that the statement in the
demand letter that "failure to cure such breach on or before said date may result in acceleration"
gave no clear and unequivocal notice that the holder would exercise the option, but "merely
restated the option conferred in the deed of trust." Id. (emphasis added). The court held that the
lender's subsequent foreclosure was therefore invalid. Id. Though Austin Savings's statement that
it "intends" to exercise its rights is somewhat more positive than the Ogden holder's statement that
it "may" exercise its rights, the difference is scarcely appreciable absent a more specific
declaration. Affidavits from former Austin Savings officials stating that Austin Savings "was
going forward with the exercise of its legal rights" to collect the balance due and pursue the
collateral do not make the letter unequivocal; the November 1989 letter indicates movement
toward acceleration and foreclosure, but it is neither unequivocal nor sufficient alone.

 Even if the November 1989 letter is an implicit and effective notice of intent to
accelerate, the record does not show conclusively that the maturity of the note was actually
accelerated. Neither the note nor the letter sets up an automatic acceleration schedule upon default
or on a particular date. Nor does the record reveal that a holder of the note took an affirmative
action towards enforcing the declared intent to accelerate after the November letter. Courts insist
that an unequivocal expression of intent to accelerate must be "followed by affirmative action
towards enforcing the declared intention." See Swoboda, 975 S.W.2d at 776 (italics in original;
court emphasizes giving "follow" its ordinary meaning); see also Shepler v. Kubena, 563 S.W.2d
382, 385 (Tex. Civ. App.--Austin 1978, no writ); Pope, 260 S.W. at 905. There is no evidence
that Austin Savings took any action after the November 28, 1989 letter; the implication is that it
took no action because it went into receivership the next day. There is no evidence the RTC or
any holder before Sarasota did anything to pursue collection of the note. The only action in
evidence other than the November letter was the loan committee's referral of the note to an
attorney for collection before the November letter; that referral, however, did not follow the
demand letter. We conclude that there is no evidence of any action by a holder toward
acceleration following the November 1989 demand letter and before the November 1995 maturity
date.

 Finally, appellees have not shown conclusively that the note was automatically
accelerated by their default. The note and deeds of trust do not require acceleration upon default;
the holder must choose to accelerate the indebtedness. Even if appellees waived their right to
notice of intent to accelerate and of acceleration, a holder must clearly and unequivocally exercise
its option to accelerate. See Kehoe v. Lambert, 673 S.W.2d 576, 577-78 (Tex. App.--Houston
[14th Dist.] 1982, writ ref'd n.r.e.). The summary-judgment record lacks evidence of
acceleration.

 Because appellees have not shown conclusively that the maturity date was
accelerated, there is at least a fact question regarding whether Sarasota filed within the statute of
limitations period. The limitations period triggered by the RTC's involvement is six years. See
12 U.S.C. § 1821(d)(14). Absent acceleration, the note matured on its own terms on November
1, 1995 and the statute will not expire until November 2001. Because there is a fact question
regarding the maturity date and thus whether Sarasota's suit and attempted foreclosure are time
barred, we conclude that the district court erred by granting summary judgment in appellees' favor
based on the statute of limitations.

 We reverse the judgment and remand the cause for further proceedings.



 

 Mack Kidd, Justice


Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Reversed and Remanded

Filed: February 28, 2001

Do Not Publish


ly that Austin Savings clearly and
unequivocally expressed an intent to accelerate. The November 1989 letter does not mention
acceleration. Even if acceleration is implicit in the mention of foreclosure, the letter does not state
unequivocally that acceleration will occur or when it will occur. At most, the letter informed
appellees that a failure to bring payments on the note current by December 28, 1989 might result
in acceleration at some point. In that respect, it resembles the letter found ineffective to induce
acceleration in Ogden. 640 S.W.2d at 234. There, the court found that the statement in the
demand letter that "failure to cure such breach on or before said date may result in acceleration"
gave no clear and unequivocal notice that the holder would exercise the option, but "merely
restated the option conferred in the deed of trust." Id. (emphasis added). The court held that the
lender's subsequent foreclosure was therefore invalid. Id. Though Austin Savings's statement that
it "intends" to exercise its rights is somewhat more positive than the Ogden holder's statement that
it "may" exercise its rights, the difference is scarcely appreciable absent a more specific
declaration. Affidavits from former Austin Savings officials stating that Austin Savings "was
going forward with the exercise of its legal rights" to collect the balance due and pursue the
collateral do not make the letter unequivocal; the November 1989 letter indicates movement
toward acceleration and foreclosure, but it is neither unequivocal nor sufficient alone.

 Even if the November 1989 letter is an implicit and effective notice of intent to
accelerate, the record does not show conclusively that the maturity of the note was actually
accelerated. Neither the note nor the letter sets up an automatic acceleration schedule upon default
or on a particular date. Nor does the record reveal that a holder of the note took an affirmative
action towards enforcing the declared intent to accelerate after the November letter. Courts insist
that an unequivocal expression of intent to accelerate must be "followed by affirmative action
towards enforcing the declared intention." See Swoboda, 975 S.W.2d at 776 (italics in original;
court emphasizes giving "follow" its ordinary meaning); see also Shepler v. Kubena, 563 S.W.2d
382, 385 (Tex. Civ. App.--Austin 1978, no writ); Pope, 260 S.W. at 905. There is no evidence
that Austin Savings took any action after the November 28, 1989 letter; the implication is that it
took no action because it went into receivership the next day. There is no evidence the RTC or
any holder before Sarasota did anything to pursue collection of the note. The only action in
evidence other than the November letter was the loan committee's referral of the note to an
attorney for collection before the November letter; that referral, however, did not follow the
demand letter. We conclude that there is no evidence of any action by a holder toward
acceleration following the November 1989 demand letter and before the November 1995 maturity
date.

 Finally, appellees have not shown conclusively that the note was automatically
accelerated by their default. The note and deeds of trust do not require acceleration upon default;
the holder must choose to accelerate the indebtedness. Even if appellees waived their right to
notice of intent to accelerate and of acceleration, a holder must clearly and unequivocally exercise
its option to accelerate. See Kehoe v. Lambert, 673 S.W.2d 576, 577-78 (Tex. App.--Houston
[14th Dist.] 1982, writ ref'd n.r.e.). The summary-judgment record lacks evidence of
acceleration.

 Because appellees have not shown conclusively that the maturity date was
accelerated, there is at least a fact question regarding whether Sarasota filed within the statute of
limitations period. The limitations period triggered by the RTC's involvement is six years. See
12 U.S.C. § 1821(d)(14). Absent acceleration, the note matured on its own terms on November
1, 1995 and the statute will not expire until November 2001. Because there is a fact question
regarding the maturity date and thus whether Sarasota's suit and attempted foreclosure are time
barred, we conclude that the district court erred by granting summary judgment in appellees' favor
based on the statute of limitations.

 We reverse the judgment and remand the cause