Trust v Barua (2020 NY Slip Op 03095)





Trust v Barua


2020 NY Slip Op 03095


Decided on June 3, 2020


Appellate Division, Second Department


Dillon, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 3, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
MARK C. DILLON
JOHN M. LEVENTHAL
ROBERT J. MILLER, JJ.


2017-12206
 (Index No. 611910/15)

[*1]Christiana Trust, etc., respondent, 
v
Himon Barua, appellant, et al., defendants.



APPEAL by the defendant Himon Barua, in an action to foreclose a mortgage, from an order of the Supreme Court (Peter H. Mayer, J.) dated September 7, 2017, and entered in Suffolk County. The order, insofar as appealed from, denied that defendant's motion pursuant to CPLR 3211(a)(5) to dismiss the complaint insofar as asserted against him as time-barred and to cancel a lis pendens filed against the subject property.



Ehsanul Habib, Forest Hills, NY, for appellant.
Knuckles, Komosinski & Manfro, LLP, Elmsford, NY (Jordan J. Manfro of counsel), for respondent.



DILLON, J.


OPINION & ORDER
This is an appeal that involves the commencement of a mortgage foreclosure action that accelerated the full balance of the debt, the discontinuance of that action, the later commencement of a second action on the same note, and the statute of limitations. For reasons set forth below, we hold that the second action was time-barred, as it was commenced beyond the applicable six-year statute of limitations of CPLR 213(4). We also address whether the mere discontinuance of an action, in and of itself, nullifies any debt acceleration demanded in a foreclosure plaintiff's complaint, absent other communication to the borrower that de-acceleration is also intended by the discontinuance.
I. Relevant Facts
On July 25, 2006, the defendant Himon Barua (hereinafter the defendant) executed a note in the sum of $312,000 in favor of JPMorgan Chase Bank, N.A. (hereinafter Chase). The note was secured by a residential mortgage executed by both the defendant and the defendant Emon Barua encumbering certain real property located in Brentwood (hereinafter the subject property). The defendant allegedly defaulted in his monthly payment obligations on the note beginning on April 1, 2009.
On November 6, 2009, Chase commenced a mortgage foreclosure action against the defendant and others by the filing of a summons and complaint in the Supreme Court (hereinafter the first action). Chase alleged in paragraph 9 of the complaint that the named defendants defaulted on their payment obligations under the note and mortgage by failing to make the payment that had become due on April 1, 2009. In paragraph 11 of the complaint, it was alleged that Chase "elected and does hereby elect to declare the entire principal balance [of the note] to be due and owing." Later, according to an eCourts printout contained in the record, Chase moved to discontinue the first action, and the motion was granted in an order dated October 15, 2013.
In a summons with notice and complaint filed on November 10, 2015, Christiana [*2]Trust, a Division of Wilmington Savings Fund Society, FSB, as trustee for Normandy Mortgage Loan Trust, Series 2013-18 (hereinafter the plaintiff), commenced an action against the defendant and others to foreclose the mortgage on the subject property (hereinafter the second action). The plaintiff alleged that it was the holder of the note and the assignee of the mortgage, and that the defendant was in default of his payment obligations. Paragraph III(E) of the complaint alleged that the plaintiff "elected to and hereby accelerate[s] the mortgage and declare[s] the entire mortgage indebtedness immediately due and payable."
On March 10, 2016, the defendant moved pursuant to CPLR 3211(a)(5) to dismiss the complaint insofar as asserted against him on the ground that the second action was time-barred and to cancel a lis pendens that had been filed against the subject property. The defendant argued that since the first action was commenced on November 6, 2009, and accelerated the full amount due on the note at that time, the second action, commenced on November 10, 2015, was commenced beyond the six-year statute of limitations of CPLR 213(4) and was therefore untimely. In opposition, the plaintiff argued, inter alia, that the discontinuance of the first action without prejudice, which occurred within six years of that action's acceleration of the full balance due on the note, operated as a de-acceleration of the debt. The plaintiff further argued that the discontinuance of the first action "leaves the situation as if the action had never been filed" (internal quotation marks omitted), in effect erasing the acceleration of the debt which occurred when the first action was commenced on November 6, 2009. The plaintiff concluded that the commencement of the second action on November 10, 2015, constituted a new acceleration rendering the second action timely.
In the order appealed from, dated September 7, 2017, the Supreme Court, inter alia, denied the defendant's motion. The court agreed with the plaintiff that when the first action was discontinued, everything that had occurred within that action, including Chase's acceleration of the loan debt, was annulled. The court concluded that since the first action had been voluntarily discontinued by Chase, that affirmative act revoked the 2009 acceleration of the debt, and the debt acceleration of the second action in 2015 was therefore timely.
For the reasons we discuss below, we reverse the order insofar as appealed from.
II. The Effect of De-acceleration Upon the Statute of Limitations
The parties do not dispute that the controlling statute of limitations for breach of contract actions is six years (see CPLR 213[4]; Milone v US Bank N.A., 164 AD3d 145, 151; Wells Fargo Bank, N.A. v Eitani, 148 AD3d 193, 197; Kashipour v Wilmington Sav. Fund Socy., FSB, 144 AD3d 985, 986), and that the first action had the stated effect of accelerating the balance of the debt owed on the defendant's note, which triggered the limitations period (see Kashipour v Wilmington Sav. Fund Socy., FSB, 144 AD3d at 986; EMC Mtge. Corp. v Patella, 279 AD2d 604, 605). The plaintiff and the defendant differ about whether the 2009 debt acceleration was thereafter extinguished by the affirmative discontinuance of the first action on October 15, 2013.
Two years ago, this Court addressed similar issues in Milone v US Bank N.A. (164 AD3d 145). In Milone, a lender commenced an action to foreclose a mortgage upon residential property on January 13, 2009, as a result of the borrower's default in making monthly installment payments on the note. The acceleration of the full mortgage debt in that action had the effect of commencing the six-year statute of limitations set forth in CPLR 213(4). In an order of the Supreme Court dated February 29, 2012, the action was dismissed after more than three years had run against the statute of limitations. On October 21, 2014, approximately three months before the statute of limitations was to expire, the lender's servicer transmitted a letter to the borrower advising that the note, which had previously been accelerated, was de-accelerated, that any prior demand for full payment on the note was withdrawn, and that the debt was reinstituted as an installment loan (see Milone v US Bank N.A., 164 AD3d at 149).
On March 10, 2015, after the six-year statute of limitations had expired as measured from the initial debt acceleration, the borrower in Milone commenced an action pursuant to RPAPL 1501 to cancel and discharge the mortgage and note, arguing that no new foreclosure action had been commenced on the note within six years from its acceleration. The lender moved to dismiss the complaint in the RPAPL 1501 action on the ground that since a de-acceleration of the loan balance had occurred within six years of the acceleration, there was no violation of the statute of limitations and a new six-year limitations period would only begin to run if the full balance of the same note were to be accelerated at some time in the future (see Milone v US Bank N.A., 164 AD3d at 149-150). The borrower cross-moved for summary judgment on the complaint. The Supreme Court granted the lender's motion to dismiss the complaint with prejudice and denied the borrower's cross [*3]motion for summary judgment on the complaint. On appeal, this Court modified the order, concluding that the Supreme Court should have denied the lender's motion to dismiss the complaint because there was a question of fact as to the lender's standing to de-accelerate the loan debt.
This Court used the occasion in Milone to sort out the law and procedures governing the acceleration and de-acceleration of notes. We recognized well-established precedent that lenders may revoke the acceleration of full mortgage loan balances, so long as the revocation is accomplished by an affirmative act occurring within six years of the earlier acceleration (see id. at 154, citing Deutsche Bank Natl. Trust Co. v Adrian, 157 AD3d 934, 935, MSMJ Realty, LLC v DLJ Mtge. Capital, Inc., 157 AD3d 885, 887, NMNT Realty Corp. v Knoxville 2012 Trust, 151 AD3d 1068, 1069-1070, U.S. Bank N.A. v Barnett, 151 AD3d 791, 793, Kashipour v Wilmington Sav. Fund Socy., FSB, 144 AD3d at 987, UMLIC VP, LLC v Mellace, 19 AD3d 684, Clayton Natl. v Guldi, 307 AD2d 982, and EMC Mtge. Corp. v Patella, 279 AD2d at 606; see also HSBC Bank USA, N.A. v Gold, 171 AD3d 1029, 1030; Freedom Mtge. Corp. v Engel, 163 AD3d 631, 632, lv granted in part 33 NY3d 1039; Deutsche Bank Natl. Trust Co. v Adrian, 157 AD3d at 935). We then held for the first time that just as acceleration notices must be clear and unambiguous (see Nationstar Mtge., LLC v Weisblum, 143 AD3d 866, 867; Wells Fargo Bank, N.A. v Burke, 94 AD3d 980, 983; Sarva v Chakravorty, 34 AD3d 438, 439; see also J & JT Holding Corp. v Deutsche Bank Natl. Trust Co., 173 AD3d 704), the de-acceleration of note balances must also be clear and unambiguous to convey the fact that the previous demand for full payment of the note has been affirmatively revoked (see Milone v US Bank N.A., 164 AD3d at 153). We further held in Milone, for the first time, that just as standing is a prerequisite to a valid acceleration, a party must also have standing to effect a de-acceleration of the debt (see id. at 155). Moreover, recognizing that the foreclosure of mortgages encumbering residential properties involves elements of equity, we held in Milone that the declaration of a de-acceleration cannot be utilized as a mere pretext to avoid the onerous effect of the statute of limitations.
"[A] de-acceleration letter is not pretextual if . . . it contains an express demand for monthly payments on the note, or, in the absence of such express demand, it is accompanied by copies of monthly invoices transmitted to the homeowner for installment payments, or is supported by other forms of evidence demonstrating that the lender was truly seeking to de-accelerate and not attempting to achieve another purpose under the guise of de-acceleration" (id. at 154, citing Deutsche Bank Natl. Trust Co. Ams. v Bernal, 56 Misc 3d 915, 923-924 [Sup Ct, Westchester County, Scheinkman, J.]).
The Milone case involved a de-acceleration letter from a servicer that clearly and unambiguously demanded a resumption of monthly installment payments on the note. Here, by contrast, we are faced not with a letter of de-acceleration, but a discontinuance of the first action, which had sought full payment of the accelerated debt. Beyond Milone, this Court has repeatedly held that a lender's mere act of discontinuing an action, without more, does not constitute, in and of itself, an affirmative act revoking an earlier acceleration of the debt (see Bank of N.Y. Mellon v Yacoob, ___ AD3d ___, 2020 NY Slip Op 02451 [2d Dept]; HSBC Bank, N.A. v Vaswani, 174 AD3d 514, 515; Federal Natl. Mtge. Assn. v Schmitt, 172 AD3d 1324, 1326; Aquino v Ventures Trust 2013-I-H-R by MCM Capital Partners, 172 AD3d 663; Bank of N.Y. Mellon v Craig, 169 AD3d 627, 629; U.S. Bank Trust, N.A. v Aorta, 167 AD3d 807, 809; Freedom Mtge. Corp. v Engel, 163 AD3d at 633; Beneficial Homeowner Serv. Corp. v Tovar, 150 AD3d 657, 658)[FN1]. Various reported trial level decisions and orders holding to the contrary should no longer be followed.
The reason for requiring that a valid de-acceleration requires more than a bare discontinuance of a foreclosure action is that the full balance of a mortgage debt cannot be sought without an acceleration, whereas the voluntary discontinuance of a foreclosure action may be [*4]occasioned for any number of different reasons, including those that have nothing to do with an intent to revoke the acceleration. A bare discontinuance does not disclose its underlying reasons nor say anything about the discontinuing party's intent to de-accelerate the full debt.
There are sound legal and public policy reasons in requiring that a lender or servicer, upon de-accelerating a loan balance, demonstrate its good-faith and bona fide intentions in rescinding its demand for the full loan balance and in seeking a resumption of monthly installment payments. Once a mortgage debt is accelerated, the borrower's right and obligation to make monthly installments ceases and all sums and penalties become immediately due and payable (see Federal Natl. Mtge. Assn. v Mebane, 208 AD2d 892, 894). A borrower so circumstanced may typically, necessarily, and detrimentally rely upon the acceleration for not tendering further monthly payments on the note, knowing that monthly installments will no longer be accepted (see Deutsche Bank Natl. Trust Co. Ams. v Bernal, 56 Misc 3d at 923). While the borrower might have defaulted in the first instance as a result of a financial inability to pay monthly installments, it is entirely possible in some cases that a borrower may acquire, after the loan balance is accelerated, the ability to pay arrears and maintain current payments, though lacking the ability to pay off the entire accelerated debt (see id.). A de-acceleration of the full debt revives the borrower's right to make the monthly payments that became due between the time the loan was accelerated and the time the acceleration was revoked, together with the right to make future monthly installment payments. Since the borrower may continue to assume that its lender or servicer will not accept post-acceleration monthly payments, the lender, in order to effectively rescind the acceleration, should be required to notify the borrower that the right to make monthly payments is restored and that the lender will accept the tender of such payments (see id.). Indeed, for residential mortgage loans subject to the federal Real Estate Settlement Procedures Act (hereinafter RESPA), the rules promulgated by the Consumer Financial Protection Board pursuant to RESPA require the issuance of statements for each periodic billing period (see 12 USC § 2617; 12 CFR 1026.41[a][2]; [b], [d]).
Here, the plaintiff did not submit to the Supreme Court, and hence could not include in the appellate record (see CPLR 5526; Matter of Dondi, 63 NY2d 331, 339; Yauchler v Serth, 114 AD3d 1069; Singer v Board of Educ. of City of N.Y., 97 AD2d 507; Renelique v American Tr. Ins. Co., 47 Misc 3d 134[A], 2015 NY Slip Op 50482[U], *1 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists]), a copy of the earlier motion papers that sought to discontinue the first action. The plaintiff also did not provide to the court, and could not include in the appellate record, the order dated October 15, 2013, that granted the motion to discontinue the first action, as it instead relied at all times upon a mere eCourts printout of the motion history of the first action. As a result, the plaintiff failed to demonstrate any language in the motion to discontinue, or in the order rendered thereon, that clearly and unambiguously repudiated the statement in Chase's verified complaint that Chase had elected to accelerate the full amount of the outstanding loan debt (see Bank of New York Mellon v Yacoob, ___ AD3d ___, 2020 NY Slip Op 02451; HSBC Bank, N.A. v Vaswani, 174 AD3d at 515; Federal Natl. Mtge. Assn. v Schmitt, 172 AD3d at 1326; Aquino v Ventures Trust 2013-I-H-R by MCM Capital Partners, 172 AD3d at 663; Bank of N.Y. Mellon v Craig, 169 AD3d at 629; U.S. Bank Trust, N.A. v Aorta, 167 AD3d at 809; Freedom Mtge. Corp. v Engel, 163 AD3d at 633; Deutsche Bank Natl. Trust Co. v Adrian, 157 AD3d at 935-936; cf. Beneficial Homeowner Serv. Corp. v Tovar, 150 AD3d at 658). The plaintiff also failed to establish that it ever demanded a resumption of monthly mortgage installment payments, invoiced the defendant for such payments, or offered any other evidence demonstrating that it was truly seeking to de-accelerate the debt in addition to its discontinuance of the action (see Milone v US Bank N.A., 164 AD3d at 155). Other evidence of a valid de-acceleration may include, but is not limited to, the voluntary vacatur of a lender's filed lis pendens (see CPLR 6514[d]), and a forbearance agreement evincing a clear intent to revoke a prior acceleration and reinstate the homeowner's right to repay the underlying debt in monthly installments (see U.S. Bank Trust, N.A. v Rudick, 172 AD3d 1430, 1431), but the record is devoid of evidence of those activities as well.
Our developed law that the discontinuance of residential mortgage foreclosure actions is not tantamount to an automatic de-acceleration of the full loan debt is further buttressed by the fact that these actions are not only creatures of contract law. Mortgage foreclosure actions are not purely contractual, but are a unique hybrid of contract (the note) and equity (foreclosure on the premises and eviction of the homeowner). " A foreclosure action is equitable in nature and triggers the equitable powers of the court'" (Onewest Bank, FSB v Kaur, 172 AD3d 1392, 1393-1394, quoting Rajic v Faust, 165 AD3d 716, 717). We are therefore not persuaded by our dissenting colleague that [*5]courts cannot examine the subjective intent of the discontinuing party in these instances. If residential mortgage foreclosure actions are flavored with a twist of equity, as they are, then the decisional authority that has developed in Milone and its progeny, and in Bernal, has a valid equitable basis, without representing any judicial drift on the part of our Court.
Moreover, the acceleration of a debt in a residential mortgage foreclosure action survives a simple discontinuance of the action, because the right to exercise an acceleration independently arises from the provisions of the note between the parties, and not from the existence of the potential judicial remedies of the court. In other words, the mere discontinuance of an action is not tantamount to a withdrawal of the acceleration itself, but merely withdraws the prayer that the court assist the lender in collecting the accelerated amount. The right to collect the full debt, once accelerated, exists under paragraph 7(c) of the parties' note independent of the lawsuit unless, as we have previously held, a de-acceleration is clearly and unambiguously communicated to the borrower as such. To the extent our dissenting colleague suggests that the discontinuance of an action withdraws all requests for relief, including any demand for recovering the accelerated debt, citing Loeb v Willis (100 NY 231) and Mahon v Remington (256 App Div 889), those cases are inapplicable, as an acceleration springs from the parties' note, and not from the collateral right to commence an action upon it.
Indeed, as noted by the Court of Appeals, "[t]he fact of election [to accelerate a mortgage debt] should not be confused with the notice or manifestation of such election" (Albertina Realty Co. v Rosbro Realty Corp., 258 NY 472, 476). An acceleration may be communicated in different forms—by a letter to the borrower clearly and unambiguously advising that because of a default in payment the full loan balance was being called due (see Nationstar Mtge., LLC v Weisblum, 143 AD3d at 867; Wells Fargo Bank, N.A. v Burke, 94 AD3d at 982-983; Sarva v Chakravorty, 34 AD3d at 439), by a self-executing balloon payment due at the end of the payback period (see Trustco Bank N.Y. v 37 Clark St., 157 Misc 2d 843, 844 [Sup Ct, Saratoga County]), or, as relevant here, by commencing an action where the complaint seeks to recover the full amount of the loan balance (see Albertina Realty Co. v Rosbro Realty Corp., 258 NY at 476; Wells Fargo Bank, N.A. v Lefkowitz, 171 AD3d 843, 844; Clayton Natl. v Guldi, 307 AD2d 982; City Sts. Realty Corp. v Jan Jay Constr. Enters. Corp., 88 AD2d 558, 559). Those activities are unilaterally initiated by the lender or servicer as a matter of right or, as in the case of a final balloon payment, by prior contractual agreement of the parties. A bare discontinuance of litigation does not nullify the fact that a contractual right to accelerate has been unilaterally exercised pursuant to the terms of a note. An acceleration of loan debt by the transmittal of a letter or by the commencement of an action in a court of law has legal implications, such as the financial penalties authorized under the note, the potential negative effect upon the borrower's credit rating, and reliance by the borrower that monthly payments will no longer be expected or accepted and thereby prevent any pay-down of the balance owed. To occur, none of these or other consequences of an acceleration require any permission, ruling, stipulation, decision, or order of a court, as they are independent of the litigation.
Here, since Chase accelerated the loan balance by commencing the first action on November 6, 2009, and the second action was not commenced until November 10, 2015, the defendant met his initial burden of demonstrating, prima facie, that the second action is time-barred by operation of CPLR 213(4) and 3211(a)(5) by four days (see HSBC Bank USA, N.A. v Gold, 171 AD3d at 1030; Bank of N.Y. Mellon v Dieudonne, 171 AD3d 34, 36; U.S. Bank N.A. v Joseph, 159 AD3d 968, 969; U.S. Bank N.A. v Gordon, 158 AD3d 832, 834; Campone v Panos, 142 AD3d 1126, 1127; Stewart v GDC Tower at Greystone, 138 AD3d 729, 730). In opposition, where the burden of going forward shifted, the plaintiff failed to raise a question of fact as to whether the statute of limitations was tolled or otherwise inapplicable, or whether it actually commenced the second action within the applicable limitations period (see HSBC Bank USA, N.A. v Gold, 171 AD3d at 1030; U.S. Bank N.A. v Joseph, 159 AD3d at 969; U.S. Bank N.A. v Gordon, 158 AD3d at 834; Stewart v GDC Tower at Greystone, 138 AD3d at 730; Barry v Cadman Towers, Inc., 136 AD3d 951, 952), as there is no evidence in the record that Chase or the plaintiff ever communicated a de-acceleration of the demand for payment of the full debt. Therefore, the Supreme Court should have granted that branch of the defendant's motion which was pursuant to CPLR 3211(a)(5) to dismiss the complaint in the second action insofar as asserted against him as time-barred.
III. The Interplay of CPLR 204(a) and RPAPL 1304
The plaintiff argues that the second action is timely pursuant to CPLR 204(a) because [*6]the 90-day period required for mailing a statutory notice of default under RPAPL 1304 operates as a toll of the statute of limitations for that same period of time. Although the plaintiff's argument is raised for the first time on appeal, we are able to reach it since it is an issue of law which appears on the face of the record and could not have been avoided had it been raised before the Supreme Court (see Countrywide Bank, FSB v Singh, 173 AD3d 673, 675).
The notice period of RPAPL 1304 does not operate to toll the statute of limitations. CPLR 204(a) authorizes the tolling of a statute of limitations where the commencement of an action is stayed by a court order or by a statutory prohibition (see Torsoe Bros. Constr. Corp. v McKenzie, 271 AD2d 682, 682-683). There is a difference between a "statutory prohibition," on the one hand, which tolls the statute of limitations, and a "condition precedent" to suit, on the other, which does not generate a toll (see Barchet v New York City Tr. Auth., 20 NY2d 1, 6; HSBC Bank USA v Kirschenbaum, 159 AD3d 506, 506-507). RPAPL 1304 is not a statutory prohibition within the scope of CPLR 204(a), but is instead a condition precedent to the commencement of mortgage foreclosure actions (see Citibank, N.A. v Conti-Scheurer, 172 AD3d 17; Marchai Props., L.P. v Fu, 171 AD3d 722, 724-725; Wells Fargo Bank, N.A. v Trupia, 150 AD3d 1049, 1050; Aurora Loan Servs., LLC v Weisblum, 85 AD3d 95, 106). As such, RPAPL 1304 does not trigger a toll of the applicable statute of limitations under CPLR 204(a) (see HSBC Bank USA v Kirschenbaum, 159 AD3d at 507; cf. Singh v New York City Health & Hosps. Corp. [Bellevue Hosp. Ctr. & Queens Hosp. Ctr.], 107 AD3d 780, 782; Pilgrim v New York City Tr. Auth., 235 AD2d 527, 527-528; Costa v Deutsche Bank Natl. Trust Co. for GSR Mtge. Loan Trust 2006-OA1, 247 F Supp 3d 329, 344-348 [SD NY]). CPLR 201 cautions that "[n]o court shall extend the time limited by law for the commencement of an action." Here, were it relevant, the plaintiff does not even detail how or in what manner its compliance with RPAPL 1304 caused its commencement of the second action to occur four days beyond the expiration of the six-year statute of limitations (see HSBC Bank USA v Kirschenbaum, 159 AD3d at 506-507; cf. Capital One, N.A. v Saglimbeni, 170 AD3d 508, 509).
IV. Miscellaneous
In light of our determination to grant that branch of the defendant's motion which was to dismiss the complaint insofar as asserted against him, we also grant that branch of the defendant's motion which was to cancel the lis pendens that had been filed against the subject property (see Gallagher Removal Serv. v Duchnowski, 179 AD2d 622).
The parties' remaining contentions are without merit or have been rendered academic by other aspects of this opinion and order.
In light of the foregoing, the order is reversed insofar as appealed from, on the law, and the defendant's motion pursuant to CPLR 3211(a)(5) to dismiss the complaint insofar as asserted against him as time-barred and to cancel the lis pendens filed against the subject property is granted.
SCHEINKMAN, P.J., and LEVENTHAL, J., concur.
ORDERED that the order is reversed insofar as appealed from, on the law, with costs, and the motion of the defendant Himon Barua pursuant to CPLR 3211(a)(5) to dismiss the complaint insofar as asserted against him as time-barred and to cancel a lis pendens filed against the subject property is granted.
MILLER, J., concurs in part and dissents in part, and votes to modify the order, on the law, by deleting the provision thereof denying that branch of the motion of the defendant Himon Barua which was pursuant to CPLR 3211(a)(5) to dismiss so much of the complaint as sought to recover damages for any unpaid installments that were due prior to November 10, 2009, insofar as asserted against him, and substituting therefor a provision granting that branch of the motion, and, as so modified, to affirm the order insofar as appealed from, with the following memorandum:
It is rare, given the centuries of jurisprudence upon which we may draw, for a court to encounter a truly novel legal issue. This is especially true when legal issues arise from a well-developed practice area such as contract law. When legal precedent is available, it should be applied in accordance with the doctrine of stare decisis. That doctrine, among other things, "reassures the public that our decisions arise from a continuum of legal principle rather than the personal caprice of the members of [a] Court" (People v Peque, 22 NY3d 168, 194; see Matter of Brooke S.B. v Elizabeth A.C.C., 28 NY3d 1, 23).
In this case, we are urged to announce and extend an entirely new set of legal rules [*7]to govern the issues that have arisen in this relatively straightforward mortgage foreclosure action. The issues implicated by this case are not new, however, and the legal precedents that have developed to address these situations should not be so lightly cast aside with vague references to "equity" or through the invocation of one-sided hypotheticals that have no bearing on the facts of this case.
Instead of restoring clarity and predictability, the decision to ignore precedent will foster additional confusion in this important area of the law. And while the public policy views underlying the decision to create these new rules are no doubt laudable, they are realized here without any legislative basis, and at the expense of the parties' contract. Accordingly, and for the reasons that follow, I must respectfully dissent in part.
1. Factual and Procedural Background
With summons and notice dated August 5, 2015, and filed November 10, 2015, the plaintiff, Christiana Trust, commenced this action to foreclose a mortgage. The complaint alleged that the defendant Himon Barua (hereinafter the borrower) executed a note in the sum of $312,000 in favor of the defendant JPMorgan Chase Bank, N.A. (hereinafter Chase). The complaint alleged that the borrower defaulted under the terms of the note by failing to make required monthly payments beginning with the payment due on April 1, 2009, and "each subsequent month thereafter." The complaint alleged that in light of the borrower's default, the plaintiff was electing to accelerate the mortgage debt and declare the entire indebtedness immediately due and payable. The plaintiff sought a judicial sale of the property to satisfy the amounts due under the terms of the note and, if necessary, a deficiency judgment against the borrower.
There is no indication in the record that the borrower has ever interposed an answer in response to the complaint. In any event, with notice dated March 10, 2016, the borrower moved, inter alia, pursuant to CPLR 3211(a)(5) to dismiss the complaint insofar as asserted against him on the ground that the action is barred by the statute of limitations. In support of his motion, the borrower submitted, inter alia, a complaint in a prior foreclosure action that had been commenced by Chase in 2009 (hereinafter the 2009 action), and an eCourts printout indicating that the prior action had been discontinued by Chase sometime in 2013. The borrower argued that Chase had unequivocally elected to accelerate the mortgage debt by commencing the 2009 action, and that the present action was time-barred by virtue of the fact that it had been commenced more than six years later.
The plaintiff opposed the borrower's motion. The plaintiff argued that the motion was not properly before the court because the borrower had defaulted in this action and had failed to set forth a reasonable excuse for his default. In any event, the plaintiff contended that the voluntary discontinuance in the 2009 action constituted a revocation of Chase's election to accelerate the mortgage debt and foreclose the mortgage.
In an order dated September 7, 2017, the Supreme Court, among other things, denied the borrower's motion, inter alia, to dismiss the complaint insofar as asserted against him pursuant to CPLR 3211(a)(5). The court noted that, generally, the holder of a note is entitled to revoke its election to accelerate a mortgage debt so long as it does so within six years of the acceleration, i.e., before the six-year statute of limitations period has run. The court determined that, in this case, Chase had revoked its election to accelerate the mortgage debt and foreclose the mortgage by voluntarily discontinuing the 2009 action, which had been effected in an order dated October 15, 2013. In light of the evidence that Chase had revoked its election to accelerate the mortgage debt less than six years prior to the commencement of the instant action, the court concluded that the instant action was timely commenced.
The borrower appeals from the Supreme Court's order. On appeal, the borrower contends that the court erred in denying his motion, inter alia, to dismiss the complaint insofar as asserted against him as time-barred. The borrower contends that Chase's voluntary discontinuance of the 2009 action did not constitute an affirmative act revoking Chase's election to accelerate the mortgage debt and foreclose the mortgage. In response, the plaintiff contends that, in accordance with this Court's case law, the court properly denied the borrower's motion since the evidence that Chase voluntary discontinued the 2009 action raised a question of fact as to whether Chase revoked its election to accelerate the mortgage debt and foreclose the mortgage.
2. Legal Analysis
The statute of limitations is an affirmative defense (see CPLR 3018[b]). At a trial, "[t]he defendant interposing the Statute of Limitations as an affirmative defense has the burden of [*8]proving its applicability" (Connell v Hayden, 83 AD2d 30, 39). "However, a plaintiff relying upon an exception thereto has the burden of proving that [it] comes within the exception" (id. at 39).
"[T]he Statute of Limitations is generally viewed as a personal defense" (John J. Kassner & Co. v City of New York, 46 NY2d 544, 550). "[A]s a general rule a party who has not raised the Statute of Limitations as a defense in the answer or by a motion to dismiss is held to have waived it" (id. at 552; see CPLR 3211[e]; see also Weinstein-Korn-Miller, NY Civ Prac CPLR ¶ 201.11 [2020]).
The CPLR authorizes "[a] party [to] move for judgment dismissing one or more causes of action asserted against [them] on the ground that . . . the cause of action may not be maintained because of . . . [a] statute of limitations" (CPLR 3211[a][5]). "In resolving a motion to dismiss pursuant to CPLR 3211(a)(5), the court must accept the facts as alleged in the complaint as true, and accord the plaintiff the benefit of every possible favorable inference" (U.S. Bank N.A. v Gordon, 158 AD3d 832, 834; see Faison v Lewis, 25 NY3d 220, 224; Ford v Phillips, 121 AD3d 1232, 1234; 6D Farm Corp. v Carr, 63 AD3d 903, 905; see also Leon v Martinez, 84 NY2d 83, 87-88).
"To dismiss a cause of action pursuant to CPLR 3211(a)(5) on the ground that it is barred by the applicable statute of limitations, a defendant bears the initial burden of demonstrating, prima facie, that the time within which to commence the action has expired" (Stewart v GDC Tower at Greystone, 138 AD3d 729, 729; see Campone v Panos, 142 AD3d 1126, 1127). "If the defendant satisfies this burden, the burden shifts to the plaintiff to raise a question of fact as to whether the statute of limitations was tolled or otherwise inapplicable, or whether the plaintiff actually commenced the action within the applicable limitations period" (Barry v Cadman Towers, Inc., 136 AD3d 951, 952; see U.S. Bank N.A. v Gordon, 158 AD3d at 834-835; Stewart v GDC Tower at Greystone, 138 AD3d at 730).
As relevant here, "an action upon a bond or note, the payment of which is secured by a mortgage upon real property, or upon a bond or note and mortgage so secured, or upon a mortgage of real property, or any interest therein" "must be commenced within six years" (CPLR 213[4]). "The time within which an action must be commenced, except as otherwise expressly prescribed, shall be computed from the time the cause of action accrued to the time the claim is interposed" (CPLR 203[a]; see Hahn Automotive Warehouse, Inc. v American Zurich Ins. Co., 18 NY3d 765, 770). Accordingly, to meet its initial burden on a motion pursuant to CPLR 3211(a)(5), a defendant must establish, as a matter of law, "when the causes of action accrued" (Philip F. v Roman Catholic Diocese of Las Vegas, 70 AD3d 765, 766; see Swift v New York Med. Coll., 25 AD3d 686, 687).
Generally, "[a] cause of action does not accrue until its enforcement becomes possible" (Jacobus v Colgate, 217 NY 235, 245). This occurs "as soon as a claimant is able to state the elements of that cause of action, and hence, to assert a valid right to some sort of legal relief" (Roldan v Allstate Ins. Co., 149 AD2d 20, 26; see Bank of N.Y. Mellon v Dieudonne, 171 AD3d 34, 36; New York City Tr. Auth. v Morris J. Eisen, P.C., 276 AD2d 78, 85).
Since nominal damages are always available to enforce the promises given in a contract (see Kronos, Inc. v AVX Corp., 81 NY2d 90, 95; cf. Schmidt v Merchants Despatch Transp. Co., 270 NY 287, 300), all of the elements necessary to maintain a cause of action alleging breach of contract are present at the time the contract is breached (see Ely-Cruikshank Co. v Bank of Montreal, 81 NY2d 399, 402). Accordingly, "[i]n New York, a breach of contract cause of action accrues at the time of the breach" (id. at 402; see Hahn Automotive Warehouse, Inc. v American Zurich Ins. Co., 18 NY3d at 770).
Where, as here, the alleged breach is a default in the making of a monthly installment payment, a separate breach occurs for each installment that is not paid, and the statute of limitations begins to run on each cause of action "on the date each installment becomes due" (Wells Fargo Bank, N.A. v Burke, 94 AD3d 980, 982; see Wells Fargo Bank, N.A. v Cohen, 80 AD3d 753, 754; Loiacono v Goldberg, 240 AD2d 476, 477; Pagano v Smith, 201 AD2d 632, 633). "[T]he cause of action accrues when the plaintiff possesses a legal right to demand payment" (Swift v New York Med. Coll., 25 AD3d at 687 [internal quotation marks omitted]; see Minskoff Grant Realty & Mgt. Corp. v 211 Mgr. Corp., 71 AD3d 843, 845; Kuo v Wall St. Mtge. Bankers, Ltd., 65 AD3d 1089, 1090).
Accordingly, an action may generally be brought on each unpaid installment within six years of the time it matured or became due (see 1 Bergman on New York Mortgage Foreclosures § 5.11[2] [2020]). Conversely, and without more, "recovery is barred for installments due more than six years before the mortgage foreclosure action was commenced" (id.).
In this case it is clear, based on the factual allegations in the complaint alone, that the statute of limitations bars recovery of a portion of the damages sought in this action. As previously indicated, this action was commenced with the filing of the summons with notice on November 10, 2015 (see CPLR 304[a]; see also CPLR 2102). The complaint specifically seeks to recover damages for unpaid installments that were due beginning on April 1, 2009—more than six years before this action was interposed. The borrower's submissions established, prima facie, that recovery is time-barred for any unpaid installments that were due prior to November 10, 2009—to wit, from the installment due on April 1, 2009, up to and including the installment due on November 1, 2009 (see CPLR 203[a]; 213[4]; see also General Construction Law § 20).
In response to the borrower's motion, the plaintiff failed to raise a question of fact as to whether the action was timely with respect to any unpaid installments that were due before November 10, 2009. The plaintiff did not address the fact that, on its face, the complaint seeks to recover payments that were due more than six years before this action was commenced. Accordingly, the Supreme Court should have granted the borrower's motion to the extent of dismissing so much of the complaint as sought to recover damages for any unpaid installments that were due prior to November 10, 2009, insofar as asserted against him (see e.g. Elia v Perla, 150 AD3d 962, 965; Central Gen. Hosp. v Bramex Ltd., 174 AD2d 556, 556).
The borrower contends that the plaintiff is also barred from recovering damages for any unpaid installments that were due less than six years prior to the commencement of this action, as well as barred from recovering damages for installments that have not yet come due under the terms of the parties' agreements. Notably, in this regard, the borrower agreed in the note to make monthly installment payments until August 1, 2036.
The borrower contends that, upon his default, Chase validly exercised its option to accelerate the maturity of the entire unpaid portion of the mortgage debt. Since this acceleration occurred more than six years prior to the commencement of this action, the borrower contends that the statute of limitations has run on the entire unpaid portion of the mortgage debt, and that the Supreme Court should have granted dismissal of the entire complaint as time-barred.
"[E]ven if a mortgage is payable in installments, the terms of the mortgage may contain an acceleration clause that gives the lender the option to demand due the entire balance of principal and interest upon the occurrence of certain events delineated in the mortgage'" (Bank of N.Y. Mellon v Dieudonne, 171 AD3d at 37, quoting 1 Bergman on New York Mortgage Foreclosures § 4.02; see Wells Fargo Bank, N.A. v Burke, 94 AD3d at 982-983). "Once [a] mortgage debt [is] accelerated, the borrowers' right and obligation to make monthly installments cease[s] and all sums [become] immediately due and payable" (Federal Natl. Mtge. Assn. v Mebane, 208 AD2d 892, 894; see EMC Mtge. Corp. v Patella, 279 AD2d 604, 605).
A lender's right to accelerate a mortgage debt does not arise from the common law or a statute, but from the terms of the parties' agreement. Accordingly, the specific terms of each note and mortgage dictate the circumstances under which a holder may demand due the entire balance of principal and interest (cf. Real Property Law § 254[2]). Generally speaking, the holder's option to accelerate the mortgage debt becomes operable when the borrower commits what amounts to a material breach of the parties' agreement, as defined in the agreement itself (cf. Awards.com v Kinko's, Inc., 42 AD3d 178, 187, affd 14 NY3d 791).
Thus, it has been recognized that "an acceleration clause . . . is merely a device . . . intended to secure the [borrower's] obligation to perform a material element of the bargain" (Fifty States Mgt. Corp. v Pioneer Auto Parks, 46 NY2d 573, 578). An option to accelerate is properly viewed as a remedy "for the benefit of the mortgagee, in whose control it should repose" (1 Bergman on New York Mortgage Foreclosures § 4.03). It need hardly be said that the holder of a note and mortgage is not required to seek or obtain the borrower's consent to an acceleration, as the decision of whether to exercise an option to accelerate a mortgage debt is reserved solely to the discretion of the holder, as one of the remedies available to compensate it for a material breach committed by the borrower (see Cohn v Spitzer, 145 App Div 104, 107, affd 207 NY 738; cf. U.S. Bank Trust, N.A. v Rudick, 172 AD3d 1430, 1431).
The decision of whether to exercise an option to accelerate a mortgage debt in response to a qualifying breach constitutes the election of a remedy. Until the holder affirmatively elects to take advantage of the option to accelerate the mortgage debt, "[it] has no operation" (Wells Fargo Bank, N.A. v Burke, 94 AD3d at 983; see Esther M. Mertz Trust v Fox Meadow Partners, 288 AD2d 338, 340; Ward v Walkley, 143 AD2d 415, 417; see also 1 Bergman on New York Mortgage [*9]Foreclosures §§ 4.05, 5.11[2]; cf. Phoenix Acquisition Corp. v Campcore, Inc., 81 NY2d 138, 142-144). Accordingly, until it is affirmatively exercised, a holder's "right to accelerate the debt [does] not affect the Statute of Limitations," which, under such circumstances, continues to run "only upon the maturity of [each] discrete [payment] obligation" (Vigilant Ins. Co. of Am. v Housing Auth. of City of El Paso, Tex., 87 NY2d 36, 44).
As a general matter, in order to constitute a valid election to accelerate, the entity making the election must have the contractual authority, or "standing," to make the election, and that authority must be exercised in accordance with the terms of the note and mortgage (Milone v US Bank N.A., 164 AD3d 145, 155; see U.S. Bank N.A. v Gordon, 158 AD3d at 836; Wells Fargo Bank, N.A. v Burke, 94 AD3d at 982-983; see also Avail Holding LLC v Ramos, 2019 WL 6498170, 2019 US Dist LEXIS 208524 [ED NY, No. 19-CV-117 (BMC)]). Accordingly, where the parties' agreements "provide what the holder of the mortgage must do to evidence its election to declare the whole amount due," those terms must be followed (Albertina Realty Co. v Rosbro Realty Corp., 258 NY 472, 475).
"Where the acceleration of the maturity of a mortgage debt on default is made optional with the holder of the note and mortgage, some affirmative action must be taken evidencing the holder's election to take advantage of the accelerating provision" (Wells Fargo Bank, N.A. v Burke, 94 AD3d at 982-983). In order for a holder's election to be enforceable against the borrower, the borrower must generally be provided "with notice of the lender's decision to exercise an option to accelerate the maturity of a loan" (Bank of N.Y. Mellon v Dieudonne, 171 AD3d at 38; see EMC Mtge. Corp. v Smith, 18 AD3d 602, 603). To be enforceable, notice of the holder's election must be "clear and unequivocal" (Sarva v Chakravorty, 34 AD3d 438, 439; see Arbisser v Gelbelman, 286 AD2d 693, 694; Colonie Block & Supply Co. v Overmyer Co., 35 AD2d 897, 897).
In commencing an action to enforce the terms of a note, the holder must set forth the remedy it seeks for the alleged breach. Where the plaintiff is the holder of both the note and mortgage, it must first elect whether to proceed "at law in a suit on the debt as evidenced by the note [or] in equity to foreclose the mortgage" (Copp v Sands Point Mar., 17 NY2d 291, 293; see generally Motor Veh. Mfrs. Assn. v State of New York, 75 NY2d 175, 181).
If the holder elects to foreclose the mortgage, it must choose whether to foreclose the entire mortgage debt or proceed with a "partial foreclosure" (Golden v Ramapo Improvement Corp., 78 AD2d 648, 649; see 2 Bergman on New York Mortgage Foreclosures § 17.01; accord RPAPL 1351[2]). Partial foreclosure "permits a lender to recover unpaid installments that have become due, without accelerating the remaining portion of the debt" (Aurora Loan Servs., LLC v Tobing, 172 AD3d 975, 977; see Golden v Ramapo Improvement Corp., 78 AD2d at 650-651; see also 2 Bergman on New York Mortgage Foreclosures § 17.03).
If the holder of a note and mortgage elects to foreclose a portion of the mortgage debt that has not yet come due, it must necessarily exercise its option to accelerate the maturity of that portion of the debt. Under such circumstances, proper service of a pleading setting forth an election to foreclose the entire mortgage debt will ordinarily be sufficient "to put the borrower on notice that the option to accelerate the debt has been exercised" (Wells Fargo Bank, N.A. v Burke, 94 AD3d at 983; see Albertina Realty Co. v Rosbro Realty Corp., 258 NY at 476; EMC Mtge. Corp. v Smith, 18 AD3d at 603; Clayton Natl. v Guldi, 307 AD2d 982, 982; Arbisser v Gelbelman, 286 AD2d at 694). Indeed, "[t]he commencement of an action on one of two or more theories has traditionally been considered the decisive act that constitutes [an] election" (Weinstein-Korn-Miller, NY Civ Prac CPLR ¶ 3002.01).
However, "[e]ven if the bringing of an action for one remedy is a manifestation of choice of that remedy, it does not preclude the plaintiff from shifting to another remedy as long as the defendant has not materially changed his [or her] position" (Restatement [Second] of Contracts § 378, Comment a; see 12 Corbin on Contracts § 66.6). Put another way, "a binding election occurs only where an estoppel is created" (12 Corbin on Contracts § 66.7 n 3, citing Twentieth Century-Fox Film Corp. v National Publs., Inc., 294 F Supp 10, 12 [SD NY]).
Accordingly, even after the holder of a note and mortgage has elected to accelerate the entire mortgage debt, the holder retains the right to "revoke its election to accelerate . . . provided that there is no change in the borrower's position in reliance thereon" (Federal Natl. Mtge. Assn. v Mebane, 208 AD2d at 894; see Golden v Ramapo Improvement Corp., 78 AD2d at 650; see also 1 Bergman on New York Mortgage Foreclosures § 4.03[1]). The decision of whether to revoke an acceleration and seek an alternative remedy for the borrower's breach "is discretionary with the [*10][holder]" (Golden v Ramapo Improvement Corp., 78 AD2d at 650), and unless and until prejudice to the borrower is shown, the holder of a note and mortgage is "under no restraint in changing [its] mind" (id.). However, in order to be effective against the borrower, notice of the revocation must be "clear and unambiguous" (Milone v US Bank N.A., 164 AD3d at 153).
Since a valid acceleration gives the holder the immediate right to the accelerated portion of the mortgage debt, the statute of limitations begins to run on that portion of the debt from the date of the acceleration (see Wells Fargo Bank, N.A. v Burke, 94 AD3d at 982; EMC Mtge. Corp. v Patella, 279 AD2d at 605; Loiacono v Goldberg, 240 AD2d at 477). Accordingly, without more, an action to foreclose an accelerated portion of a mortgage debt is untimely if it is commenced more than six years after that mortgage debt was validly accelerated (see CPLR 213[4]).
The holder "may revoke its election to accelerate the mortgage, but it must do so by an affirmative act of revocation" within six years after the election to accelerate was validly made (NMNT Realty Corp. v Knoxville 2012 Trust, 151 AD3d 1068, 1069; see EMC Mtge. Corp. v Patella, 279 AD2d at 606). As is the case with an acceleration, an entity must have the contractual authority or "standing" to validly revoke an election to accelerate, and that authority must be exercised in accordance with the terms of the note and mortgage (Milone v US Bank N.A., 164 AD3d at 155). If an acceleration is validly revoked, the default principles of accrual apply and the statute of limitations continues to run "only upon the maturity of [each] discrete [payment] obligation" (Vigilant Ins. Co. of Am. v Housing Auth. of City of El Paso, Tex., 87 NY2d at 44), such that installment payments that were due more than six years prior to the commencement of an action will still be time-barred (see Wells Fargo Bank, N.A. v Burke, 94 AD3d at 982).
Here, in support of his motion to dismiss pursuant to CPLR 3211(a)(5), the borrower submitted, inter alia, the complaint from the 2009 action. As the borrower correctly contends, in its complaint in the 2009 action, Chase sought to recover the entire outstanding principal sum of the mortgage debt and unequivocally elected to accelerate that debt. Without more, the submission of the complaint in the 2009 action alone would have been sufficient to establish, prima facie, that the present action is time-barred, as it had been commenced more than six years after an acceleration of the entire mortgage debt had occurred (see Albertina Realty Co. v Rosbro Realty Corp., 258 NY at 476; Bank of N.Y. Mellon v Dieudonne, 171 AD3d at 38; Milone v US Bank N.A., 164 AD3d at 152-153).
However, the borrower's submissions also included evidence indicating that Chase discontinued the 2009 action sometime in 2013. As the Supreme Court in this case properly concluded, the voluntary discontinuance of the 2009 action by Chase constituted formal and unequivocal notice that it was withdrawing its complaint and all of the requests for relief contained therein (see Mahon v Remington, 256 App Div 889, 889; see also Loeb v Willis, 100 NY 231, 235). Under these circumstances, Chase "destroy[ed] the effect" of the election that it had made in the complaint in the 2009 action by affirmatively discontinuing that action and formally withdrawing its only request for that relief (Albertina Realty Co. v Rosbro Realty Corp., 258 NY at 476; cf. Beneficial Homeowner Serv. Corp. v Tovar, 150 AD3d 657, 658).
Inasmuch as the complaint in the 2009 action constituted the only evidence in the record showing that Chase had ever demanded the immediate payment of the entire mortgage debt, evidence showing that it had been affirmatively withdrawn by Chase in connection with a voluntary discontinuance raised a question of fact as to whether Chase revoked its election to accelerate (see NMNT Realty Corp. v Knoxville 2012 Trust, 151 AD3d at 1070; see also U.S. Bank N.A. v Charles, 173 AD3d 564, 565; Capital One, N.A. v Saglimbeni, 170 AD3d 508, 509). Since the only demand for payment of the full debt that is contained in the record was formally and voluntarily withdrawn by Chase, I cannot agree with my colleagues' conclusion that there is no evidence in the record that Chase ever affirmatively revoked its demand for payment of the full debt (see majority op at 7).
Under the circumstances, since the borrower submitted this evidence of the voluntary discontinuance in support of his motion, he failed to sustain his initial burden of eliminating all questions of fact as to whether the entire action is time-barred (see U.S. Bank N.A. v Gordon, 158 AD3d at 834-835). Under such circumstances, the Supreme Court should have denied the borrower's motion to the extent that it pertained to the portions of the complaint that sought to recover damages for any unpaid installments that were due on or after November 10, 2009.
My colleagues in the majority, relying on recent pronouncements from this Court, conclude that the evidence that Chase formally and affirmatively withdrew its only demand for the full payment of the debt was insufficient to raise a question of fact as to whether Chase revoked its [*11]election to accelerate. The cases relied upon my colleagues appear to be the product of judicial drift, as they fail to articulate any applicable legal theory, much less legal authority, to support their deviation from this Court's prior precedent. In order to provide perspective on this issue, it is necessary to review this Court's prior case law in this area.
In Golden v Ramapo Improvement Corp. (78 AD2d at 648), the plaintiff commenced an action to foreclose a mortgage and "elected to accelerate the remainder due under the mortgage." The plaintiff subsequently "moved for a severance and for partial summary judgment on so much of her claim as sought foreclosure and sale for all payments due as of October 20, 1976, when defendant had been formally notified of its default pursuant to the terms of the mortgage" (id.). In rejecting the defendant's position that the plaintiff either did not or could not revoke her election to accelerate, this Court stated that the "[p]laintiff's purpose in moving for severance and partial summary judgment and in submitting a judgment containing the provision for continuing the mortgage was clearly to limit her recovery to those sums already past due under the payment schedules of the mortgage note" (id. at 650).
In Federal Natl. Mtge. Assn. v Mebane (208 AD2d at 894), the plaintiff "commenced a foreclosure action . . . and exercised its option to accelerate all sums due under the mortgage by making demand in the complaint." That action was later dismissed due to the plaintiff's failure to prosecute (see id.). More than six years after the mortgage debt had been accelerated, the plaintiff commenced a second action to recover on the same debt (see id.). This Court rejected the plaintiff's contention that the court's dismissal of the first action constituted evidence that it had revoked its election to accelerate the mortgage debt, concluding that "[i]t cannot be said that a dismissal by the court constituted an affirmative act by the lender to revoke its election to accelerate" (id.).
This Court adhered to this principle in a number of subsequent determinations (see Kashipour v Wilmington Sav. Fund Socy., FSB, 144 AD3d 985, 987 ["the dismissal of the prior foreclosure action by the court did not constitute an affirmative act by the lender revoking its election to accelerate, and the record is barren of any affirmative act of revocation occurring during the six-year limitations period subsequent to the initiation of the prior action"]; Clayton Natl. v Guldi, 307 AD2d at 982 ["the dismissal of the 1992 action for lack of personal jurisdiction did not constitute an affirmative act by the lender to revoke its election to accelerate"]; EMC Mtge. Corp. v Patella, 279 AD2d at 606 ["the dismissal of the prior foreclosure action by the court did not constitute an affirmative act by the lender revoking its election to accelerate, and the record is barren of any affirmative act of revocation occurring during the six-year Statute of Limitations period"]).
This Court first addressed the issue presented on this appeal in NMNT Realty Corp. v Knoxville 2012 Trust (151 AD3d 1068). In that case, the plaintiff commenced the action pursuant to RPAPL 1501(4) to cancel and discharge of record a mortgage on the ground that any action to foreclose was barred by the statute of limitations (see NMNT Realty Corp. v Knoxville 2012 Trust, 151 AD3d at 1069). In moving for summary judgment, the plaintiff submitted a complaint from a prior action that had been commenced by the predecessor in interest of the holder of the note and mortgage to recover the entire mortgage debt (see id. at 1070). This Court concluded that the submission of the complaint established the plaintiff's prima facie entitlement to summary judgment since it established that an action to foreclose the mortgage was time-barred (see id.).
However, this Court determined that, in opposition to the plaintiff's showing, the holder of the note and mortgage raised a triable issue of fact as to whether it's predecessor in interest had revoked its election to accelerate the mortgage debt (see id.). In reaching this conclusion, this Court cited to evidence that the holder's predecessor in interest had "moved for, and . . . was granted, an order that discontinued the foreclosure action" (id.). This Court distinguished cases where the prior foreclosure action was never withdrawn by the lender, but rather, dismissed by the court, since, in those cases, there was no affirmative act by the lender to show that it had revoked its election to accelerate (see id.). This Court also rejected evidence from the original mortgagors that the " Order of Discontinuance was the result of procedural deficiencies in the proceedings,'" finding that such allegations "do not disprove an affirmative act of revocation" (id.).
This Court's determination in NMNT Realty Corp. v Knoxville 2012 Trust (151 AD3d 1068) has been cited and followed by the Appellate Division, First Department, in at least two subsequent cases (see U.S. Bank N.A. v Charles, 173 AD3d at 565 [concluding that "[t]here is an issue of fact in this particular case regarding whether plaintiff's discontinuance of the prior foreclosure action de-accelerated the mortgage," despite the fact that "neither the motion seeking discontinuance [n]or the order entered granting that relief provided that the mortgage was [*12]de-accelerated or that plaintiff would now be accepting installment payments from the defendant"]; Capital One, N.A. v Saglimbeni, 170 AD3d at 509 [concluding that "an issue of fact exists regarding whether the action is time-barred, which is dependent on whether plaintiff's assignor's voluntary discontinuance of the prior action due to a defective default notification' de-accelerated the mortgage debt"]; see also U.S. Bank Trust, N.A. v Adhami, 2019 WL 486086, *6, 2019 US Dist LEXIS 19599, *13 [ED NY, No. 18-CV-530 (PKC) (AKT)] [concluding that action should not be dismissed as time-barred since "Plaintiff has sufficiently alleged, at this stage, that the prior voluntary discontinuance tolled the statute of limitations"]; Zucker v HSBC Bank, USA, 2018 WL 2048880, *7, 2018 US Dist LEXIS 74478, *17 [ED NY, No. 17-CV-2192 (DRH) (SIL)] [noting generally that "Appellate Courts in New York have held that when a mortgagee moves for and is granted an order of discontinuance, it raises a question of fact as to [whether] there was an affirmative act to revoke its election to accelerate"]).
Moreover, as recently as last year, "ten of the thirteen New York trial courts that have considered this issue have found that [w]ithdrawing the prior foreclosure action is an affirmative act of revocation that tolls the statute of limitations" (U.S. Bank Trust, N.A. v Adhami, 2019 WL 486086, *5, 2019 US Dist LEXIS 19599, *12-13 [footnote and internal quotation marks omitted]; see e.g. Wilmington Sav. Fund Socy. v DeCanio, 55 Misc 3d 1215[A], 2017 NY Slip Op 50585[U] [Sup Ct, Suffolk County]; 4 Cosgrove 950 Corp. v Deutsche Bank Natl. Trust Co., 2016 NY Slip Op 32854[U], *3 [Sup Ct, NY County]).
In Freedom Mtge. Corp. v Engel (163 AD3d 631, lv granted in part 33 NY3d 1039), however, this Court departed from its prior precedent, without acknowledgment or explanation. In that case, the defendant established that the action was time-barred by showing that "the six-year statute of limitations began to run on the entire debt . . . when the plaintiff accelerated the mortgage debt by commencing [a] prior foreclosure action" (id. at 632-633). In opposition, the plaintiff submitted evidence that it had voluntarily entered into a stipulation discontinuing the prior foreclosure action (see id. at 633). This Court, for the first time, held that evidence of a voluntary discontinuance was only sufficient to raise a triable issue of fact if the stipulation or discontinuance explicitly stated that it was being executed in order to revoke the election to accelerate, or otherwise specifically provided that the holder of the note and mortgage would resume accepting monthly installment payments until the next default (see id.).
The new evidentiary burden imposed in Freedom Mtge. Corp. v Engel (163 AD3d 631) finds no support in the prior case law, and its imposition is based on a misconstruction of the respective burdens imposed on a motion pursuant to CPLR 3211(a)(5). Indeed, as previously noted, in opposition to a prima facie showing under CPLR 3211(a)(5), a plaintiff is not required to conclusively establish, as a matter of law, that the action is timely. Rather, it need only rebut the defendant's prima facie showing with evidence that raises a question of fact (see Pennymac Corp. v McGlade, 176 AD3d 963, 965-966). As this Court has previously recognized, in this very context, " [s]ometimes . . . whether maturity has arrived through acceleration can be a question of fact'" (Wells Fargo Bank, N.A. v Burke, 94 AD3d at 983, quoting 1 Bergman on New York Mortgage Foreclosures § 5.11[3]; cf. LPP Mtge. Ltd. v Gold, 44 AD3d 718, 719).
Inasmuch as there is no basis to require the plaintiff to establish, as a matter of law, that this action is timely, there is no basis to require the production of evidence that would conclusively establish that the plaintiff formally agreed to continue to accept prospective monthly payments (cf. Connell v Hayden, 83 AD2d at 39). Such a showing would satisfy, as a matter of law, the plaintiff's ultimate burden of proof on this issue, as it would unequivocally constitute " an affirmative act of revocation'" (Milone v US Bank N.A., 164 AD3d at 154, quoting NMNT Realty Corp. v Knoxville 2012 Trust, 151 AD3d at 1069).
In the wake of Freedom Mtge. Corp. v Engel (163 AD3d 631), there has been a proliferation of cases holding that a stipulation or a motion for a voluntary discontinuance must explicitly state that an acceleration has been revoked in order to raise a triable issue of fact in this context. But neither these cases, nor Freedom Mtge. Corp. v Engel, has ever cited to any positive authority to support the imposition of this new burden. Nor do any of those cases acknowledge or explain their deviation from this Court's prior determination in NMNT Realty Corp. v Knoxville 2012 Trust (151 AD3d 1068) or from the numerous other conflicting determinations that have been reached by other courts in this State (see U.S. Bank N.A. v Charles, 173 AD3d at 565; Capital One, N.A. v Saglimbeni, 170 AD3d at 509; see also Wilmington Sav. Fund Socy. v DeCanio, 55 Misc 3d 1215[A], 2017 NY Slip Op 50585[U]; 4 Cosgrove 950 Corp. v Deutsche Bank Natl. Trust Co., 2016 [*13]NY Slip Op 32854[U], *3; U.S. Bank Trust, N.A. v Adhami, 2019 WL 486086, 2019 US Dist LEXIS 19599). As this case illustrates, it is vital to advise the bench and bar if case law has been overruled, or it will continue to be relied upon, generating additional appeals. Given this confusion, it is hardly surprising that it has been recently observed that "New York State appellate courts have provided limited guidance on the mortgage acceleration question at issue here" (U.S. Bank Trust, N.A. v Adhami, 2019 WL 486086, *5, 2019 US Dist LEXIS 19599, *11).
Although never fully explained, the heightened evidentiary burden imposed by this Court in Freedom Mtge. Corp. v Engel (163 AD3d 631) apparently reflects the idea that the subjective motivation behind any decision to revoke an acceleration is relevant because a revocation will not be effective if it was "a pretext to avoid the onerous effect of an approaching statute of limitations and to defeat the property owner's right pursuant to RPAPL 1501 to cancel and discharge a mortgage and note" (Milone v US Bank N.A., 164 AD3d at 154; see Deutsche Bank Natl. Trust Co. Ams. v Bernal, 56 Misc 3d 915, 924 [Sup Ct, Westchester County]).
This notion, that an otherwise valid revocation may be rendered invalid based on the subjective motivations of the lender, finds no support in the case law and is at odds with well-established principles of contract law. The Court of Appeals has expressly considered the limitations on the right of a lender to revoke its election to accelerate a mortgage debt, and has applied the well-established equitable principles of estoppel to this situation (see Kilpatrick v Germania Life Ins. Co., 183 NY 163, 168). There is absolutely no authority, in either law or equity, to support the imposition of additional, noncontractual restraints on a party's right to choose the remedy it will seek as redress for its adversary's breach.
To the contrary, this Court has already recognized the circumstances under which equity may intervene: "only if a mortgagor can show substantial prejudice will a court in the exercise of its equity jurisdiction restrain the [holder] from revoking its election to accelerate" (Golden v Ramapo Improvement Corp., 78 AD2d at 650 [emphasis added]; see Kilpatrick v Germania Life Ins. Co., 183 NY at 168; Ost v Mindlin, 170 App Div 558, 559, affd 224 NY 668). Accordingly, in order to invoke the court's "equitable powers" of estoppel, a borrower must affirmatively "demonstrate . . . prejudice resulting from plaintiff's revocation of [its] election to accelerate" (Golden v Ramapo Improvement Corp., 78 AD2d at 650; see Kilpatrick v Germania Life Ins. Co., 183 NY at 168; see generally First Union Natl. Bank v Tecklenburg, 2 AD3d 575, 576-577; Deutsche Bank Natl. Trust Co. Ams. v Bernal, 56 Misc 3d at 923). Prejudice, in this context, generally "involves impairment of the [borrower's] ability to defend on the merits, rather than merely foregoing such a procedural or technical advantage" as a statute of limitations defense (National Union Fire Ins. Co. of Pittsburgh, Pa. v Barney Assoc., 130 FRD 291, 294 [SD NY]; see Kilpatrick v Germania Life Ins. Co., 183 NY at 168; see also Beauge v New York City Tr. Auth., 282 AD2d 416, 416; Busler v Corbett, 259 AD2d 13, 16). Of course, there has been no such showing or allegation of prejudice in this case.
Inasmuch as existing principles of equity serve to protect a borrower from the misuse of a contractual right (see First Union Natl. Bank v Tecklenburg, 2 AD3d at 576-577), there is no reason to introduce an entirely novel "intent" element to this well-established area of the law. An acceleration is either revoked, in fact, or it is not. Evidence of the amount demanded by the holder during the relevant period is dispositive on this point. There is no reason to add a mens rea component or inject an additional layer of analysis to explore the holder's metaphysical motivations in choosing their contractual remedy. Regardless of intent, an acceleration has not been revoked, "in fact," if the holder of the note and mortgage continues to demand the immediate payment of the entire mortgage debt or refuses to accept prospective monthly installment payments in accordance with the terms of the original agreements (Milone v US Bank N.A., 164 AD3d at 154; see Lavin v Elmakiss, 302 AD2d 638, 639).
Here, the borrower has not alleged that Chase or any subsequent holder continued to demand the immediate payment of the entire mortgage debt after it discontinued the 2009 action, or that it otherwise refused to accept any tendered monthly installment payments. Nor is there any evidence in the record indicating that Chase engaged in any such conduct.
Rather, the evidence in the record shows that Chase formally and affirmatively withdrew its only demand for the immediate payment of the entire mortgage debt. This evidence is relevant because it has a tendency to make it more likely that Chase had revoked its election to accelerate to pursue a different remedy than the one it sought in the withdrawn complaint (see generally Guide to NY Evid rule 4.01, Relevant Evidence; 1 McCormick on Evidence § 185 [8th [*14]ed 2020]). Accordingly, the order should be modified by deleting the provision thereof denying that branch of the borrower's motion which was pursuant to CPLR 3211(a)(5) to dismiss so much of the complaint as sought to recover damages for any unpaid installments that were due prior to November 10, 2009, insofar as asserted against him, and substituting therefor a provision granting that branch of the borrower's motion, and, as so modified, the order should be affirmed.
ENTER:
Aprilanne Agostino
Clerk of the Court



Footnotes

Footnote 1:The number of reported appellate cases holding that the mere discontinuance of an action does not singularly qualify as a clear and unambiguous repudiation of a prior debt acceleration are now quite numerous—so numerous, in fact, that NMNT Realty Corp. v Knoxville 2012 Trust (151 AD3d 1068), which may be construed as holding to the contrary on this one discrete legal point, appears to be an outlier.